# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KELLY BIRES, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | **CASE NO. 07-CV-959** |
| | ) | |
| WALTOM, LLC D/B/A WALTOM RACING, LLC | ) | |
| | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom"), by and through undersigned counsel, Kennedy Covington Lobdell & Hickman, L.L.P., pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby removes this action from the North Carolina General Court of Justice, Superior Court Division for Rowan County, to the United States District Court for the Middle District of North Carolina, on the following grounds:

1.      On or about November 27, 2007 an action was commenced in the North Carolina General Court of Justice, Superior Court Division for Rowan County, captioned <u>Kelly Bires v. WalTom, LLC d/b/a WalTom Racing, LLC</u>, Civil Action No. 07-CVS-3615 (the "State Court Action").

2.      WalTom was served through its registered agent by certified mail on November 30, 2007.

3.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because it has been filed within 30 days of WalTom's receipt of the Summons and Complaint in the State Court Action.

4.     The plaintiff in this action, Kelly Bires, is a citizen of the United States and claims to be a resident of Rowan County, North Carolina.  Complaint, ¶ 1.

5.     Defendant WalTom is a limited liability company organized under the laws of Illinois with its principal place of business in Illinois.  Complaint, ¶ 2.

6.     The complaint seeks a declaratory judgment that a contract between Plaintiff and WalTom is unconscionable and therefore void and unenforceable.  Complaint, First Cause of Action.

7.     Normally, in the typical case in which the plaintiff seeks monetary relief, the plaintiff's complaint controls on the issue of whether a sufficient amount is in controversy for purposes of diversity jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288, 82 L. Ed. 845, 58 S. Ct. 586 (1938 ).  Generally, courts look to the face of the complaint to determine whether the required jurisdictional amount has been alleged.  *Dash v. FirstPlus Home Loan Trust,* 248 F. Supp. 2d 489, 499 (M.D.N.C. 2003).

8.     When a plaintiff seeks declaratory relief, as in this case, the complaint states no amount in controversy.  In such a situation, a federal court must determine the "value of the object of the litigation" to ascertain the jurisdictional amount.  *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 347, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977).  The Fourth Circuit adheres to the "either party" rule when engaging in this analysis; under this approach, the court must calculate the potential pecuniary impact of the judgment to either party.  *Government Employees Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir. 1964).  Thus, WalTom must demonstrate that the value of any amounts that it claims are owed under the contract at issue exceeds $75,000.00, and an affidavit of a party is sufficient to satisfy that burden.  *Mkt. Am., Inc. v. Tong*, 2004 U.S. Dist. LEXIS 13664 (M.D.N.C. 2004)

9.     The value of the object of this litigation, i.e., the contract, and the pecuniary harm to WalTom if the declaratory judgment is granted is greater than $75,000.00, exclusive of interest and costs.  *See* Affidavit of John Mulvenna attached hereto as <u>Exhibit A</u>; *Candor Hosiery Mills, Inc. v. International Networking Group, Inc.*, 35 F. Supp. 2d 476, 479-80 (M.D.N.C. 1998) (holding that because plaintiff sought a declaratory judgment as to the existence or non-existence of agreements with the defendant, it "put the entire contracts in issue and thus their total value," not just the right to payments at the date of removal) .  Thus, the amount of Plaintiff's claim satisfies the amount in controversy requirement of 28 U.S.C. § 1332(a).

10.     Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between the Plaintiff and WalTom, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings served upon WalTom in the State Court Action are attached as <u>Exhibit B</u>.  No further proceedings have been conducted in the State Court Action.

12.     By filing this Notice of Removal, WalTom does not waive any defense that may be available to it, including improper venue.

13.     A copy of this notice will be filed with the Clerk of Superior Court for Rowan County, North Carolina, as required by 28 U.S.C. § 1446(d).

14.     WalTom will give written notice of the filing of this notice to all parties as required by 28 U.S.C. § 1446(d).

WHEREFORE, WalTom respectfully requests removal of this action from the North Carolina General Court of Justice, Superior Court Division for Rowan County, to the United States District Court for the Middle District of North Carolina.

This 20th day of December, 2007.

/s/ Christopher C. Lam
John H. Culver III
N.C. State Bar No. 17849
jculver@kennedycovington.com
Christopher C. Lam
N.C. State Bar No. 28627
clam@kennedycovington.com
214 North Tryon Street, 47th Floor
Charlotte, NC  28202
Telephone:  704-331-7449
Facsimile:  704-353-3149
ATTORNEYS FOR DEFENDANT

OF COUNSEL:

KENNEDY COVINGTON LOBDELL & HICKMAN, LLP
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone:  (704) 331-7400
Facsimile:  (704) 331-7598

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the within **NOTICE OF REMOVAL** was served on counsel for the plaintiff by email and by causing to be deposited a copy of the same in an official depository of the United States Postal Service in a postage-paid envelope, addressed as follows:

William Bray
The Bray Law Firm, PLLC
4701 Hedgemore Drive, Suite 816
Charlotte, North Carolina 28209
wbray@braylaw.com
*Attorneys for Plaintiff*

This 20th day of December, 2007.


/s/ Christopher C. Lam
Christopher C. Lam

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**KELLY BIRES,**

                **Plaintiff,**

        **v.**

**WALTOM, LLC d/b/a WALTOM**
**RACING, LLC,**

                **Defendant.**

**Case No. 07-CV-959**

### AFFIDAVIT OF JOHN MULVENNA

### IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

John Mulvenna, being duly sworn under oath deposes and states that the following facts are true and accurate to the best of his knowledge and belief:

1.     I am a citizen and resident of the State of Illinois. I am General Manager of Defendant WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom"), an Illinois limited liability company with its principal place of business in Illinois.

2.     I am over the age of 21 and am under no legal disability.

3.     I make this affidavit based on my personal knowledge and in support of Defendant's Notice of Removal.

4.     WalTom is a racing development company that teaches, mentors, and supports drivers in the development and enhancement of their professional careers in the racing industry.

**EXHIBIT**

_A._

5.      In December 2005, WalTom selected Plaintiff to be its driver for its ASA Late Model Team for the 2006 racing season.

6.      Plaintiff signed a Professional Driving and Sponsorship Agreement ("Agreement") February 7, 2006.  WalTom signed the Agreement February 9, 2006.

7.      The term of the Agreement began January 1, 2006 and continued until the conclusion of 2006 ASA season.

8.      The Agreement includes a Royalties Provision which requires Plaintiff to make payments to WalTom in the amount of 25% of all Future Race-Related Earnings for a period of ten years following Plaintiff's cessation of any and all driving duties for WalTom.  The first $100,000 of Plaintiff's Future Race-Related Earnings each year are exempt from Royalties.

9.      Future Race-Related Earnings are defined in the Agreement as "any and all gross monies or other consideration earned or received at any time by or on behalf of [Plaintiff] as a result of [Plaintiff's] activities in and throughout the Racing Industries."

10.      Per the Agreement, Racing Industries include "without limitation all aspects of racing, driving, appearances, sponsorships, endorsements, managed investments, entertainment, amusement, music, recording, songwriting, publishing, internet publishing, television, motion picture, nightclub, concert, radio and theatrical industries, and shall also include any and all forms of advertising, merchandising, or other exploitations using [Plaintiff's] name, photograph, voice, sound effects, likeness, caricatures, talents or materials."

11.    The term "activities" is defined as Plaintiff's "activities in any capacity whatsoever in the racing and entertainment industries, whether as speaker, a live performer, recording artist, musician, singer, songwriter, publisher, so-called 'sideman,' packager, owner of entertainment packages, producer, actor and shall also include the use of [Plaintiff's] name, voice, likeness, etc. as aforesaid."

12.    The Agreement provides that if Plaintiff does not race at the Professional Race Car Driving level "for ten (10) consecutive years after driving for WalTom, then the ten (10) year period shall be extended until [Plaintiff's] Future Race-Related Earnings exceeds $200,000 annually for a total of ten (10) years."

13.    During the 2006 racing season, while competing on behalf of WalTom, Plaintiff won eight races and was named 2006 Challenge Series Rookie of the Year and Challenge Series Champion.

14.    At the conclusion of the 2006 season, Plaintiff's agreement to drive for WalTom in 2006 expired and was not renewed because WalTom helped Plaintiff enter into a contract with Wood Brothers/JTG Racing, a race team competing in various divisions of NASCAR, including the NASCAR Craftsman Truck Series and the NASCAR Busch Series.

15.    According to a press release on Plaintiff's lawyer's website, Plaintiff signed a multi-year contract with Wood Brothers/JTG Racing in the Fall of 2006.

16.    Plaintiff drove for Wood Brothers/JTG Racing during the 2007 racing season.

17.    Plaintiff filed the present action November 27, 2007, seeking a declaratory judgment that the Agreement is unconscionable and therefore void and unenforceable.

18.    The amount in controversy exceeds $75,000 because if the declaratory relief is granted, WalTom will suffer losses in excess of $75,000.

19.    Because Plaintiff has not provided WalTom with an accounting of his Race-Related Earnings as required by the Agreement, WalTom does not know what Plaintiff's gross earnings have been in 2007.    However, according to the Wood Brothers/JTG Racing website, as of November 19, 2007, Plaintiff's total race winnings are at least $418,737 in the NASCAR Busch Series this year.    He has also earned winnings of $76,250 in the truck series this year.    It should be noted that in 2007, Plaintiff has only raced part-time.    Next year he will be a full-time driver.

20.    Based on my experience in the racing industry and knowledge about relationships like that between Plaintiff and Wood Brothers/JTG, I believe Plaintiff likely earns an annual salary in the range of $125,000 to $225,000, plus thirty to forty percent of the race winnings discussed in Paragraph 19.

21.    Based on my experience in the industry, and Plaintiff's performance as a professional driver, the Royalties due WalTom for the next ten years as per the Agreement will exceed $75,000.00.    Therefore the potential pecuniary impact of the judgment to WalTom exceeds $75,000.00.    The value of the object of this litigation, i.e., the contract, and the pecuniary harm to WalTom if the declaratory judgment is granted is greater than $75,000.00, exclusive of interest and costs.

Further affiant sayeth not this 20th day of _December_, 2007.

_____
JOHN MULVENNA

SWORN AND SUBSCRIBED
BEFORE ME THIS 20th DAY OF
_December_, 2007.

_____
Notary Public

My Commission Expires: 7/17/89

"OFFICIAL SEAL"
Donna Romo
Notary Public, State of Illinois
My Commission Expires 07-17-2009

12/10/07   MON 13:40 FAX 8473290830        SELEXLLCES  INC.                                  ☑001

# THE BRAY LAW FIRM
### A T T O R N E Y S   A T   L A W

William P. Bray*
Shannon L. Vandiver
David L. Tkach

*Also licensed in South Carolina

November 28, 2007

**Via Certified Mail**

Waltom, LLC d/b/a Waltom Racing, LLC
c/o Bruce E. Bell, Registered Agent
222 S. Riverside Plaza, Ste. 2100
Chicago, IL 60606

      *Re:*   *Kelly Bires v. Waltom, LLC d/b/a Waltom Racing, LLC;*
               *07-CVS-3615 (Rowan County)*

Dear Mr. Bell:

Enclosed please find a Civil Summons and file-stamped Complaint with regard to the above-captioned matter.

Best regards,

Carrie W. Hatfield
*Paralegal*

EXHIBIT

B

# STATE OF NORTH CAROLINA

▶ *File No.*
07-CVS- *3615*

_____ Rowan _____ County

In The General Court of Justice
☐ District  ☒ Superior Court Division

*Name of Plaintiff*
Kelly Bires

*Address*
c/o The Bray Law Firm, 4701 Hedgemore Drive, Suite 816

*City, State, Zip*
Charlotte, NC  28209

## CIVIL SUMMONS

☐ **ALIAS AND PLURIES SUMMONS**

G.S. 1A-1, Rules 3, 4

### VERSUS

*Name of Defendant(s)*
Waltom, LLC d/b/a Waltom Racing, LLC

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

**To Each of The Defendant(s) Named Below:**

| *Name And Address of Defendant 1* | *Name And Address of Defendant 2* |
|---|---|
| Waltom, LLC d/b/a Waltom Racing, LLC<br>c/o Bruce E. Bell, Registered Agent<br>222 S. Riverside Plaza, Ste. 2100<br>Chicago, IL 60606 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>William P. Bray, Esq.<br>The Bray Law Firm, PLLC<br>4701 Hedgemore Drive, Suite 816<br>Charlotte, NC 28209 | *Date Issued*  11-27-07 | *Time*  10:10  ☒ AM  ☐ PM |
|---|---|---|
| | *Signature*  Dave Earnhardt Asst | |
| | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date of Endorsement* | *Time*  ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** *Many Counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts                    (Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | Name of Defendant: |
|---|---|---|
| | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | Name of Defendant |
|---|---|---|
| | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to person named below.

*Name And Address of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name of Sheriff (Type of Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

12/10/07    MON 13:41 FAX 8473290830                SELEXLLCES INC.                                    ☑004

# STATE OF NORTH CAROLINA

|  | File No. |
|---|---|
|  | ▶ 07-CVS- 3615 |

____Rowan____    County

In The General Court of Justice
☐ District  ☒ Superior Court Division

| *Name of Plaintiff*<br>Kelly Bires | |
|---|---|
| *Address*<br>c/o The Bray Law Firm, 4701 Hedgemore Drive, Suite 816 | **CIVIL SUMMONS** |
| *City, State, Zip*<br>Charlotte, NC 28209 | ☐ **ALIAS AND PLURIES SUMMONS** |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name of Defendant(s)*<br>Waltom, LLC d/b/a Waltom Racing, LLC | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each of The Defendant(s) Named Below:

| *Name And Address of Defendant 1*<br>Waltom, LLC d/b/a Waltom Racing, LLC<br>c/o Bruce E. Bell, Registered Agent<br>222 S. Riverside Plaza, Ste, 2100<br>Chicago, IL 60606 | *Name And Address of Defendant 2* |
|---|---|

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>William P. Bray, Esq.<br>The Bray Law Firm, PLLC<br>4701 Hedgemore Drive, Suite 816<br>Charlotte, NC 28209 | *Date Issued*<br>11-27-07 | *Time*<br>10-10 ☒ AM ☐ PM |
|---|---|---|
| | *Signature*<br>Dale Earnhardt Asst | |
| | ☐ *Deputy CSC*  ☒ *Assistant CSC* | ☐ *Clerk of Superior Court* |

| ☐ **ENDORSEMENT**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC*  ☐ *Assistant CSC* | ☐ *Clerk of Superior Court* |

NOTE TO PARTIES:  *Many Counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts                    (Over)

FILED

STATE OF NORTH CAROLINA NOV 27  AM 10:10    IN THE GENERAL COURT OF JUSTICE
                                                                SUPERIOR COURT DIVISION
COUNTY OF ROWAN      ROW⋯⋯⋯ C.S.C.                   07-CVS- 3615

                                              BY⋯⋯⋯ d

KELLY BIRES,                          )
                                      )
                Plaintiff,            )
                                      )
        v.                            )                  **VERIFIED**
                                      )                  **COMPLAINT**
WALTOM, LLC d/b/a WALTOM RACING )                (Jury Trial Demanded)
LLC,                                  )
                                      )
                Defendant.            )
                                      )
                                      )
                                      )

NOW COMES THE PLAINTIFF, complaining of the Defendant and alleges as follows:

1.    Plaintiff Kelly Bires (hereinafter referred to as "Plaintiff," "Bires" or "Plaintiff Bires") is a citizen and resident of Kannapolis, Rowan County, North Carolina.

2.    Upon information and belief, Defendant WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom" or "Defendant") is a limited liability company organized and existing under the laws of the State of Illinois with primary places of business in Sussex, Wisconsin and Burr Ridge, Illinois.

3.    At all times relevant, the Defendant was and is engaged in substantial activity within North Carolina purposefully availing itself of the privilege of conducting business within North Carolina both generally from its continuous and systematic activities within North Carolina and specifically, with regard to the facts and circumstances at issue herein, including but not limited to by, as discussed in detail below, conducting testing and other business in North Carolina with or concerning Plaintiff.

1

4.      Accordingly, venue and jurisdiction are proper in the Superior Courts of North Carolina.

5.      Plaintiff is a professional race car driver by trade, and currently competes in various series of the National Association for Stock Car Auto Racing, which association is more commonly referred to and will hereinafter be referred to as "NASCAR."

6.      In 2005, Plaintiff, at his own cost and expense, competed in various races at different venues.

7.      In the hopes of driving a full race season schedule in the ASA Late Model Series in 2006, in October of 2005 Plaintiff, then twenty-two (22) years old, applied for a position with the Defendant's ASA Late Model team in the ASA Late Model Challenge Series.

8.      Shortly after October 2005, Defendant contacted Plaintiff and invited Plaintiff to participate in a series of driving tests to be held over a period of three (3) days at a test race track in Hudson, North Carolina.

9.      At least nine (9) other prospective drivers competed in these tests conducted by the Defendant in Hudson, North Carolina, the purpose of which was, upon information and belief, to allow Defendant to examine driving related skills of the prospective drivers, all of whom were competing for an opportunity to race with, for or on behalf of the Defendant in 2006.

10.     After Plaintiff's successful driving performance in Hudson, North Carolina, Defendant contacted Plaintiff and demanded that he participate in additional testing in Pensacola, Florida, in order to have an opportunity to race for the Defendant in 2006.

11.     After the Pensacola, Florida testing, Defendant offered Plaintiff a position as the driver of Defendant's #89 ASA Late Model racecar (hereinafter referred to as the "#89 Team") for the 2006 season in the ASA Late Model Challenge Series.

2

12.    The Plaintiff accepted Defendant's offer to race for Defendant as the driver of Defendant's #89 Team and moved to Sussex, Wisconsin, the location of Defendant's race shop, to do so.

13.    In Sussex, Wisconsin Plaintiff began working with the #89 Team, helping build race cars for the 2006 ASA Late Model Challenge Series season and otherwise assisting in the preparation for the 2006 season.

14.    Prior to moving to Sussex, Wisconsin and prior to or at the time of Plaintiff's initiation of employment with Defendant, Defendant had not presented Plaintiff with any written agreements regarding terms other than those as offered and previously accepted by Plaintiff, to wit, a position as the driver of the #89 Team in 2006.

15.    At some point after Plaintiff had accepted Defendant's offer, after he had moved to Sussex, Wisconsin and after he began working for, with or on behalf of Defendant, Defendant submitted to Plaintiff a proposed written contract containing additional terms and conditions.

16.    Due to, *inter alia*, the onerous language of the proposed written contract submitted by the Defendant, Plaintiff initially refused outright to sign the proposed written contract.

17.    After some discussions between Plaintiff and Defendant regarding the Defendant's proposed contract, Defendant made minor alterations to the written document but otherwise refused to make any further changes.

18.    By the end of January 2006 the Plaintiff still refused to execute the proposed written contract due to the continued presence of onerous and one-sided language.

19.    Defendant then made various threats to Plaintiff concerning Plaintiff's racing for Defendant in the 2006 season and specifically told Plaintiff that it had "ten other drivers that

3

wouldn't hesitate to take his place," and that the Plaintiff had to sign the proposed written
contract or the Defendant would find another driver to take the place of the Plaintiff.

    20.    In or around February of 2006 the Plaintiff signed the document that is attached
hereto as Exhibit A.

    21.    Exhibit A is a true and accurate copy of the document signed by Plaintiff.

    22.    The term of Exhibit A was to begin on or about January of 2006 and continue
until its expiration at the conclusion of the 2006 ASA season.

    23.    Section 5 of Exhibit A (hereinafter referred to as the "Royalties Provision")
contains terms for payments to be made by Plaintiff to Defendant on monies earned by Plaintiff
after the expiration of Exhibit A.

    24.    The Royalties Provisions purportedly requires Plaintiff to make payments to
Defendant in the amount of twenty-five percent (25%) of all gross income, as defined in the
Royalties Provision, for a period of ten (10) years following Plaintiff's cessation of any and all
driving or other duties for Defendant.

    25.    Depending on the nature of the Plaintiff's career, the ten (10) year period
referenced in the Royalties Provision may be extended indefinitely.

    26.    Payments under the Royalties Provision are to be derived from future money
earned by the Plaintiff not only as a professionsal race car driver but also monies related to
"managed investments, entertainment, amusement, music, recording, songwriting, publishing,
internet publishing, television, motion picture, nightclub, concert, radio and theatrical industries .
. . as a speaker, a live performer, recording artist, musician, singer, songwriter, publisher, so-
called 'sideman,' packager, owner of entertainment packages; producer actor and [] also
include[s] the use of the Driver's name, voice, likeness, etc." Exhibit A at ¶ 5.

27.   Section 5 of Exhibit A further states:

It is the intent of the parties that WalTom be compensated out of Driver's Future Race-Related Earnings for a total of ten (10) years of Professional Race Car Driving ("PRCD"). PRCD is defined as full-time professional racing at the NASCAR Craftsman Truck, NASCAR Busch or NASCAR Nextel Cup levels or other driver compensation [sic] equivalent professional racing association.

Exhibit A at ¶ 5.

28.   During the 2006 ASA Late Model Challenge Series season, while competing on behalf of the Defendant and the #89 team, Plaintiff won six (6) races and was named the 2006 Challenge Series Rookie of the Year and Challenge Series Champion.

29.   The 2006 racing season was the only season that the Plaintiff competed for the Defendant or the #89 Team.

30.   At the conclusion of the 2006 season, Plaintiff and Defendant's agreement for Plaintiff to drive for Defendant in 2006 expired, as would have the written purported contract at Exhibit A, and Defendant made no further offers to Plaintiff for Plaintiff to race for, with or on behalf of Defendant in 2007.

31.   In or around October of 2006, Plaintiff was contacted by Wood Brothers/JTG Racing (hereinafter referred to as "WoodBros/JTG"), a race team competing in various divisions of NASCAR, to drive for, with and on its behalf in the NASCAR Craftsman Truck Series during the 2007 racing season.

32.   Defendant did not assist, advise or otherwise take any efforts related in any way to securing the Plaintiff's opportunity with WoodBros/JTG.

33.    Plaintiff accepted the offer of WoodBros/JTG and, accordingly, competed in the NASCAR Craftsman Truck Series and the NASCAR Busch Series for Wood Bros/JTG during 2007.

34.    Upon information and belief, Defendant has sold substantially all of the assets of its ASA Late Model teams, including the #89 Team.

### FIRST CLAIM FOR RELIEF
#### (Declaratory Judgment)

35. .    All previous allegations are incorporated by reference as if fully contained herein.

36.    Plaintiff is an interested person within the meaning of the North Carolina Declaratory Judgments Act, N.C. Gen. Stat. § 1-253, *et seq.*, with respect to Exhibit A.

37.    Exhibit A is void, invalid and unenforceable as it, *inter alia*, is unconscionable, .fails for a lack of consideration or that the consideration is grossly inadequate and in that there was no meeting of the minds, the parties did not agree as to the essential terms of Exhibit A and Exhibit A is otherwise too vague or uncertain in many of its terms to be enforceable.

38.    Additionally, Exhibit A was effectively nonnegotiable inasmuch as the Defendant did not allow Plaintiff any substantial ability to negotiate the terms of Exhibit A and told Plaintiff that he had to sign Exhibit A in a form substantially similar to that initially proposed in order for Plaintiff to drive for Defendant, a right Plaintiff already had under the terms of Plaintiff and Defenant's existing agreement.

39.    The Defendant had superior bargaining power when compared to Plaintiff based on the economic circumstances and realities including but not limited to that Plaintiff had already been offered and accepted the position to race for Defendant, Plaintiff could not afford to finance his own racing team for the 2006 ASA season nor was he able to achieve similar services from

6

other third parties, Plaintiff was told that he had to sign Exhibit A and race with the Defendant or face the possibility that he might not get the chance to race professionally in 2006.

40.    No honest and fair person under similar circumstances would have proposed the terms of Exhibit A, including but not limited to the Royalty Provision thereof and no reasonable person of relatively equal bargaining power would have accepted the same.

41.    Exhibit A is, *inter alia*, unconscionable and should be rendered void and unenforceable.

42.    Prior to the filing of this action, Defendant has repeatedly through various correspondence and other actions taken the affirmative position that Exhibit A is valid and enforceable and that Defendant, thus, expects Plaintiff to render accountings and payments to Defendant thereunder.

43.    Accordingly, a real and justiciable controversy currently exists between the parties arising out of the parties opposing contentions as to the validity and enforceability of Exhibit A and the parties legal rights and liabilities related thereto.

44.    Plaintiff seeks, pursuant to N.C. Gen. Stat. § 1-253, *et seq.*, that this Court declare the rights, status and other legal relations concerning or related to the validity or invalidity, enforceability or unenforceability of Exhibit A and the parties' related rights and/or obligations.

45.    Plaintiff specifically requests that this Court declare that the purported contract is null, void, invalid and unenforceable and that, therefore, Plaintiff has not duties or obligations thereunder.

WHEREFORE, Plaintiff respectfully requests the following relief from this Court:

(a)    That judgment be entered for Plaintiff and against Defendant and that Exhibit A be declared null, void, invalid and unenforceable and that the Court declare that Plaintiff is in no way bound by any terms of Exhibit A;

7

(b)    For a trial by jury on all issues raised herein;

(c)    That all of the costs incurred by Plaintiff in prosecuting this action be taxed to the Defendant including reasonable attorneys' fees; and

(d)    That Plaintiff be awarded such other and further relief as the court deems just and proper.

Respectfully submitted, this the 21st day of November, 2007.

THE BRAY LAW FIRM, PLLC

William Bray
North Carolina Bar No. 20494
4701 Hedgemore Drive, Suite 816
Charlotte, North Carolina  28209
Phone: 704-523-7777
Fax: 704-523-7780
*Attorney for Plaintiff*

8

12/10/07  MON 13:44 FAX 8473290830              SELEXLLCES INC.                                    ☑013

STATE OF NORTH CAROLINA

COUNTY OF ROWAN

VERIFICATION

Kelly Bires, being first duly sworn, deposes and states that he is the Plaintiff, and knows the contents of the foregoing Complaint; that the same are true to his own knowledge, except as to the matters and things therein stated on information and belief, and as to those matters, he believes them to be true.

_____
Kelly Bires

Mecklenburg County, North Carolina

Sworn to and subscribed before me this day by Kelly Bires.

Date: _November 20_, 2007

_Stacy D. Allison_
Notary Public
My Commission Expires: _May 10, 2012_

[SEAL]



12/10/07  MON 13:45 FAX 8473290830          SELEXILLCES INC.                                    ☑014



Exhibit
A

## Professional Driving and Sponsorship Agreement

This Professional Driving and Sponsorship Agreement ("Agreement") is made and entered into by and between Kelly Bires ("Driver") and WalTom Racing, LLC ("WalTom"), effective this 1st day of January, 2006.

WHEREAS, Driver desires to receive instruction, mentoring, and financial support from WalTom in the development and enhancement of his professional career in the racing industry;

WHEREAS, the nature and extent of Driver's success or failure as a professional driver cannot be pre-determined;

WHEREAS, WalTom is willing to accept the risk of failure and likewise benefit to the extent of Driver's long-term success;

WHEREAS, this Agreement is entered in the spirit of continued friendship, cooperation, and long-term mutual enrichment;

NOW, THEREFORE, for and in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Driver and WalTom agree as follows:

1.  **Driver Salary:** WalTom agrees to pay Driver or his designee the sum of $2,800 every month while Driver is driving for WalTom on WalTom's ASA Late Model ("ASA") team in the ASA Late Model Challenge Series events, plus selected ASA Late Model North or South Series events, and/or other selected events. From event purse monies received, WalTom also agrees to pay Driver incentives equal to twenty percent (20%) for Driver's finishing positions of 10th or better and an additional $500 bonus for each race Driver wins. Driver shall not receive a percentage of year-end point fund monies or other year-end bonuses if any, except that Driver shall receive an additional $1,000 bonus if Driver wins the ASA Late Model Challenge Series points championship.

2.  **Expenses to be paid by WalTom:** WalTom at its sole discretion and subject to termination at-will by WalTom at any time will continue to pay the expenses associated with running a competitive ASA racing team for Driver including but not limited to: the Driver Salary paid to Driver described in paragraph 1 above, pit equipment, race haulers, tools, cars, travel expenses, professional fees, personnel expenses, uniforms, rent, utilities and other costs and expenses associated therewith.

3.  **Term:** The term of this Agreement shall commence January 1, 2006 and shall run through the last scheduled ASA race in 2006. WalTom shall have the option to renew this Agreement for the 2007 ASA racing season or any part thereof.

4.  **Driving and Related Duties:**

    A. **Physical Condition and Conduct:** Driver agrees to serve WalTom and its race team diligently and faithfully, to keep in first class physical condition, and to observe and comply with all the team's rules and regulations. Driver agrees to conform to high standards of personal conduct (before, during and after working hours), fair play and good sportsmanship. Driver agrees to stay drug free and agrees to submit to random drug testing by WalTom or ASA. Driver also agrees to submit to physical or psychological examination at the expense of WalTom. Driver has no physical or mental defects which would prevent or impair the performance of Driver's skilled

Driver KB  WalTom TB

services as a professional driver for WalTom. Driver is capable of and will perform race car driving and such other duties as may be required under this Agreement with expertise, diligence and fidelity.

B. **Promotion:** Driver agrees to cooperate with WalTom and to participate in any and all promotional activities of WalTom which, in the sole opinion of WalTom, will promote the race team, ASA, or professional racing.

5.    **Royalties:** In exchange for the Driver Salary payments made to Driver or his designee, the substantial costs and expenses advanced by WalTom for the benefit of Driver, for the advice, counsel, training and mentoring, and other valuable consideration, Driver agrees to make future payments to WalTom as follows:

For a period of ten (10) years after Driver ceases driving for WalTom Driver shall pay royalties to WalTom in the amount of twenty-five percent (25%) of all Future Race-Related Earnings defined as follows:  Future Race-Related Earnings are any and all gross monies or other consideration earned or received at any time by or on behalf of Driver as a result of Driver's activities in and throughout the Racing Industries.  As used herein, Racing Industries shall include without limitation all aspects of racing, driving, appearances, sponsorships, endorsements, managed investments, entertainment, amusement, music, recording, songwriting, publishing, internet publishing, television, motion picture, nightclub, concert, radio and theatrical industries, and shall also include any and all forms of advertising, merchandising, or other exploitations using Driver's name, photograph, voice, sound effect, likeness, caricatures, talents or materials.  The term "activities" shall mean Driver's activities in any capacity whatsoever in the racing and entertainment industries, whether as speaker, a live performer, recording artist, musician, singer, songwriter, publisher, so-called "sideman," packager, owner of entertainment packages, producer, actor and shall also include the use of Driver's name, voice, likeness, etc. as aforesaid.  Notwithstanding the foregoing for each year for which Royalties are due to WalTom the first $100,000 of Driver's Future Race-Related Earnings are exempt from Royalties.

It is the intent of the parties that WalTom be compensated out of Driver's Future Race-Related Earnings for a total of ten (10) years of Professional Race Car Driving ("PRCD").  PRCD is defined as full-time professional racing at the NASCAR Craftsman Truck, NASCAR Busch or NASCAR Nextel Cup levels or other driver compensation equivalent professional racing association.  In the event that Driver does not race at the PRCD level for ten (10) consecutive years after driving for WalTom, then the ten (10) year period shall be extended until Driver's Future Race-Related Earnings exceeds $200,000 annually for a total of ten (10) years.  See Exhibit A attached hereto for a sample calculation.

Gross Monies or Other Consideration:  The term "gross monies or other consideration" shall include salaries, earnings, payments, fees, royalties, advances against future earnings, residuals, repeat and/or re-run fees, bonuses, shares of profit, shares of stock, partnership interests and any and all sums resulting from Driver's activities and uses of the results and proceeds thereof, payments for termination of Driver's activities, payments to refrain from any such activities and payments in connection with the settlement or other disposition of any dispute concerning said activities, which are earned or received directly or indirectly by Driver or Driver's heirs, executors, administrators or assigns or by any other person, firm or corporation on my behalf. Driver also agrees that all gross monies or other consideration directly or indirectly earned or received by any corporation, partnership, trust, joint venture, association, proprietorship or other business entity in which driver has any direct or indirect interest or control shall be subject to royalties to WalTom.

Driver _KG_  WalTom _TD_

z

12/10/07  MON 13:45 FAX 8473290830          SELEXLLCES INC.                    ☑016

6. **Termination:** WalTom shall have the right to terminate this Agreement at any time, with or without cause. Driver may terminate his duties and obligations as ASA driver for the WalTom race team by 60-day prior written Notice as set forth in paragraph 10 below. Driver's obligations for Royalties under paragraph 5 above shall survive the termination of his driving responsibilities for WalTom.

7. **Manner of Payments:** The Royalty payments shall be made on a quarterly basis. Each payment shall be accompanied by a reasonably detailed accounting statement indicating the amount and source of each item of gross income. Upon at least ten (10) days written notice, WalTom may inspect, audit and copy the books and records of Driver or any entity in which he has an interest or over which he has control which relate to monies received for Driver's activities which are subject hereto. Such audit will be conducted at the expense of WalTom at the location where such books and records are maintained. If WalTom's audit shows a discrepancy in Royalties due to WalTom, then Driver shall remit such amount due to WalTom within ten (10) days from request. Additionally, if the discrepancy in gross income or Royalties due to WalTom exceeds 5% of the amount indicated on the detailed accounting statement presented to WalTom, then Driver shall reimburse WalTom for the reasonable costs of said audit including accounting and/or legal fees within ten (10) days from request.

8. **Independent Contractor:** Driver is an independent contractor and not an employee of WalTom. Driver and WalTom agree to be solely and independently responsible for the payment of all federal, state and local taxes, if any, on any monies paid or distributed pursuant to this Agreement.

9. **Notice:** All Notices which either party shall be required or desire to give to the other hereunder shall be in writing and shall be served by personal delivery, or United States certified or registered mail, return receipt requested, addressed to the intended recipient at the following address or such other address as either party may designate by notice.

To Driver:          (Address:    Kelly Bires
                                 4821 Easy Street #5
                                 Hartland, WI  53027

To WalTom Racing:   Mr. John Mulvenna
                    Texor Petroleum
                    3340 S. Harlem Avenue
                    Riverside, IL 60546

With cc to:         Mr. Faustin Pipal
                    Pipal & Berg, LLP
                    150 S. Wacker Drive
                    Suite 2650
                    Chicago, IL 60606

10. **Illinois Law Applies:** This Agreement shall be deemed to be executed in the State of Illinois and shall be construed in accordance with the laws of said State, and any action to enforce or interpret the terms hereof shall be brought exclusively in the courts of Cook County, IL. In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and provisions hereof.

Driver KB  WalTom ___

3

12/10/07  MON 13:46 FAX 8473290830       SELEXLLCES INC.                    ☑017

11.   **Entire Agreement:**  This Agreement is the entire agreement of the parties and supersedes any other or collateral agreement (oral or written) between the parties in any manner relating to the subject matter hereof.  This Agreement may only be modified, altered or amended by an instrument in writing signed by the party sought to be charged.

12.   **Attorney's Fees:**  In the event of any dispute under or relating to the terms of this Agreement or the performance, breach, validity, construction, interpretation, execution or legality thereof, the prevailing party shall be entitled to recover any and all reasonable attorney's fees and other costs incurred with respect to such dispute.

13.   **Pictures of Driver:**  Driver agrees, beginning with the effective date hereof that current or future photographs, whether still or action, and motion pictures may be taken and any form of broadcasts or telecasts of Driver, individually or with others, may be made at such times or places as WalTom may designate and agrees that all rights therein and all right to Driver's name, voice, signature, biographical information and likeness shall belong to WalTom and that they may be used, reproduced, sold, licensed, or otherwise disseminated or published by WalTom or its licensees, assignees and/or other designees directly or indirectly in any medium whatsoever for any purpose (including but not limited to in broadcast, in print, on trading cards, posters and other merchandise of any kind, in electronics, in audio, in video or in connection with any media), in any manner and at any time, including after the term of this Agreement, that WalTom desires. Driver acknowledges that the foregoing rights include, without limitation, all related copyright, trademark, trade name, service mark, right of publicity and/or right of privacy rights.  WalTom acknowledges that it shall not have any of the foregoing property rights in photographs or motion pictures taken or made after Driver is no longer driving for WalTom, except for royalty rights as described in paragraph 5 above.

14.   **Injunctive Relief:**  Driver has exceptional and unique skill and ability as a race car driver, and Driver's services to be rendered to WalTom are of a special and extraordinary character which gives Driver a peculiar value which cannot be reasonably or adequately compensated for by damages at law.  Therefore, Driver agrees that in addition to other remedies, WalTom shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by Driver, including without limitation the right to enjoin Driver from driving for another ASA team or organization during the term of this Agreement.

15.   **Driving for Others/Other Risky or Dangerous Sports:**  Driver agrees that during the term hereof Driver will not drive for any other race team without the written consent of WalTom.  Driver and WalTom recognize that Driver's participation in certain sports or activities may jeopardize his health and well-being.  Accordingly, Driver agrees not to engage in motorcycle racing, hang gliding, wrestling, karate, tae kwon do, judo, football, skiing, hockey or any other sport or activity involving a substantial risk of personal injury.

16.   **Assignment:**  Driver agrees and understands that this Agreement may be assigned by WalTom, but not by Driver.  Driver also agrees that his obligation for Royalties shall survive his death to the extent that his estate includes Future Racing Related Earnings.

17.   **Attorney Review:**  Driver acknowledges that he has been afforded the opportunity to seek, and in fact has sought, the advice of counsel in connection with this Agreement.  Driver's counsel has had input into the composition of this Agreement.  Driver and WalTom agree that there shall be no legal presumption imposed against either party for drafting this Agreement.

18.   **Release of Liability for Personal Injury:**  Driver hereby releases, discharges, and covenants not to sue WalTom, its owners, employees, agents and assigns from all liability to Driver, his heirs, next

Driver _KB_  WalTom _TP_

4

of kin, and assigns for any and all loss or damage and claims or demands thereof, on account of
injury to the person or property or resulting death of Driver while Driver is engaged in the
activities of operating a race car at a race event, practice or test.

Accepted and agreed to:

_____    2/7/06
Driver: Kelly Bires                 Date

Accepted and agreed to:

WalTom LLC

By: _____

Thomas E. Gleitsman
(Print Name)

Its:   MANAGING MEMBER               2/9/06
(Title)                              Date

Driver KB   WalTom TG