FILED

STATE OF NORTH CAROLINA         IN THE GENERAL COURT OF JUSTICE
                                SUPERIOR COURT DIVISION
COUNTY OF ROWAN                          07-CVS- 3615

KELLY BIRES,                    )
                                )
                Plaintiff,      )
                                )
v.                              )           VERIFIED
                                )           COMPLAINT
WALTOM, LLC d/b/a WALTOM RACING )         (Jury Trial Demanded)
LLC,                            )
                                )
                Defendant.      )
                                )
                                )
                                )

NOW COMES THE PLAINTIFF, complaining of the Defendant and alleges as follows:

1. Plaintiff Kelly Bires (hereinafter referred to as "Plaintiff," "Bires" or "Plaintiff Bires") is a citizen and resident of Kannapolis, Rowan County, North Carolina.

2. Upon information and belief, Defendant WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom" or "Defendant") is a limited liability company organized and existing under the laws of the State of Illinois with primary places of business in Sussex, Wisconsin and Burr Ridge, Illinois.

3. At all times relevant, the Defendant was and is engaged in substantial activity within North Carolina purposefully availing itself of the privilege of conducting business within North Carolina both generally from its continuous and systematic activities within North Carolina and specifically, with regard to the facts and circumstances at issue herein, including but not limited to by, as discussed in detail below, conducting testing and other business in North Carolina with or concerning Plaintiff.

1

4. Accordingly, venue and jurisdiction are proper in the Superior Courts of North Carolina.

5. Plaintiff is a professional race car driver by trade, and currently competes in various series of the National Association for Stock Car Auto Racing, which association is more commonly referred to and will hereinafter be referred to as "NASCAR."

6. In 2005, Plaintiff, at his own cost and expense, competed in various races at different venues.

7. In the hopes of driving a full race season schedule in the ASA Late Model Series in 2006, in October of 2005 Plaintiff, then twenty-two (22) years old, applied for a position with the Defendant's ASA Late Model team in the ASA Late Model Challenge Series.

8. Shortly after October 2005, Defendant contacted Plaintiff and invited Plaintiff to participate in a series of driving tests to be held over a period of three (3) days at a test race track in Hudson, North Carolina.

9. At least nine (9) other prospective drivers competed in these tests conducted by the Defendant in Hudson, North Carolina, the purpose of which was, upon information and belief, to allow Defendant to examine driving related skills of the prospective drivers, all of whom were competing for an opportunity to race with, for or on behalf of the Defendant in 2006.

10. After Plaintiff's successful driving performance in Hudson, North Carolina, Defendant contacted Plaintiff and demanded that he participate in additional testing in Pensacola, Florida, in order to have an opportunity to race for the Defendant in 2006.

11. After the Pensacola, Florida testing, Defendant offered Plaintiff a position as the driver of Defendant's #89 ASA Late Model racecar (hereinafter referred to as the "#89 Team") for the 2006 season in the ASA Late Model Challenge Series.

2

12. The Plaintiff accepted Defendant's offer to race for Defendant as the driver of Defendant's #89 Team and moved to Sussex, Wisconsin, the location of Defendant's race shop, to do so.

13. In Sussex, Wisconsin Plaintiff began working with the #89 Team, helping build race cars for the 2006 ASA Late Model Challenge Series season and otherwise assisting in the preparation for the 2006 season.

14. Prior to moving to Sussex, Wisconsin and prior to or at the time of Plaintiff's initiation of employment with Defendant, Defendant had not presented Plaintiff with any written agreements regarding terms other than those as offered and previously accepted by Plaintiff, to wit, a position as the driver of the #89 Team in 2006.

15. At some point after Plaintiff had accepted Defendant's offer, after he had moved to Sussex, Wisconsin and after he began working for, with or on behalf of Defendant, Defendant submitted to Plaintiff a proposed written contract containing additional terms and conditions.

16. Due to, *inter alia*, the onerous language of the proposed written contract submitted by the Defendant, Plaintiff initially refused outright to sign the proposed written contract.

17. After some discussions between Plaintiff and Defendant regarding the Defendant's proposed contract, Defendant made minor alterations to the written document but otherwise refused to make any further changes.

18. By the end of January 2006 the Plaintiff still refused to execute the proposed written contract due to the continued presence of onerous and one-sided language.

19. Defendant then made various threats to Plaintiff concerning Plaintiff's racing for Defendant in the 2006 season and specifically told Plaintiff that it had "ten other drivers that

wouldn't hesitate to take his place," and that the Plaintiff had to sign the proposed written contract or the Defendant would find another driver to take the place of the Plaintiff.

20. In or around February of 2006 the Plaintiff signed the document that is attached hereto as Exhibit A.

21. Exhibit A is a true and accurate copy of the document signed by Plaintiff.

22. The term of Exhibit A was to begin on or about January of 2006 and continue until its expiration at the conclusion of the 2006 ASA season.

23. Section 5 of Exhibit A (hereinafter referred to as the "Royalties Provision") contains terms for payments to be made by Plaintiff to Defendant on monies earned by Plaintiff after the expiration of Exhibit A.

24. The Royalties Provisions purportedly requires Plaintiff to make payments to Defendant in the amount of twenty-five percent (25%) of all gross income, as defined in the Royalties Provision, for a period of ten (10) years following Plaintiff's cessation of any and all driving or other duties for Defendant.

25. Depending on the nature of the Plaintiff's career, the ten (10) year period referenced in the Royalties Provision may be extended indefinitely.

26. Payments under the Royalties Provision are to be derived from future money earned by the Plaintiff not only as a professional race car driver but also monies related to "managed investments, entertainment, amusement, music, recording, songwriting, publishing, internet publishing, television, motion picture, nightclub, concert, radio and theatrical industries . . . as a speaker, a live performer, recording artist, musician, singer, songwriter, publisher, so-called 'sideman,' packager, owner of entertainment packages; producer actor and [] also include[s] the use of the Driver's name, voice, likeness, etc." Exhibit A at ¶ 5.

4

27. Section 5 of Exhibit A further states:

> It is the intent of the parties that WalTom be compensated out of Driver's Future Race-Related Earnings for a total of ten (10) years of Professional Race Car Driving ("PRCD"). PRCD is defined as full-time professional racing at the NASCAR Craftsman Truck, NASCAR Busch or NASCAR Nextel Cup levels or other driver compensation [sic] equivalent professional racing association.

Exhibit A at ¶ 5.

28. During the 2006 ASA Late Model Challenge Series season, while competing on behalf of the Defendant and the #89 team, Plaintiff won six (6) races and was named the 2006 Challenge Series Rookie of the Year and Challenge Series Champion.

29. The 2006 racing season was the only season that the Plaintiff competed for the Defendant or the #89 Team.

30. At the conclusion of the 2006 season, Plaintiff and Defendant's agreement for Plaintiff to drive for Defendant in 2006 expired, as would have the written purported contract at Exhibit A, and Defendant made no further offers to Plaintiff for Plaintiff to race for, with or on behalf of Defendant in 2007.

31. In or around October of 2006, Plaintiff was contacted by Wood Brothers/JTG Racing (hereinafter referred to as "WoodBros/JTG"), a race team competing in various divisions of NASCAR, to drive for, with and on its behalf in the NASCAR Craftsman Truck Series during the 2007 racing season.

32. Defendant did not assist, advise or otherwise take any efforts related in any way to securing the Plaintiff's opportunity with WoodBros/JTG.

5

33. Plaintiff accepted the offer of WoodBros/JTG and, accordingly, competed in the NASCAR Craftsman Truck Series and the NASCAR Busch Series for Wood Bros/JTG during 2007.

34. Upon information and belief, Defendant has sold substantially all of the assets of its ASA Late Model teams, including the #89 Team.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

35. All previous allegations are incorporated by reference as if fully contained herein.

36. Plaintiff is an interested person within the meaning of the North Carolina Declaratory Judgments Act, N.C. Gen. Stat. § 1-253, *et seq.*, with respect to Exhibit A.

37. Exhibit A is void, invalid and unenforceable as it, *inter alia*, is unconscionable, fails for a lack of consideration or that the consideration is grossly inadequate and in that there was no meeting of the minds, the parties did not agree as to the essential terms of Exhibit A and Exhibit A is otherwise too vague or uncertain in many of its terms to be enforceable.

38. Additionally, Exhibit A was effectively nonnegotiable inasmuch as the Defendant did not allow Plaintiff any substantial ability to negotiate the terms of Exhibit A and told Plaintiff that he had to sign Exhibit A in a form substantially similar to that initially proposed in order for Plaintiff to drive for Defendant, a right Plaintiff already had under the terms of Plaintiff and Defenant's existing agreement.

39. The Defendant had superior bargaining power when compared to Plaintiff based on the economic circumstances and realities including but not limited to that Plaintiff had already been offered and accepted the position to race for Defendant, Plaintiff could not afford to finance his own racing team for the 2006 ASA season nor was he able to achieve similar services from

other third parties, Plaintiff was told that he had to sign Exhibit A and race with the Defendant or face the possibility that he might not get the chance to race professionally in 2006.

40. No honest and fair person under similar circumstances would have proposed the terms of Exhibit A, including but not limited to the Royalty Provision thereof and no reasonable person of relatively equal bargaining power would have accepted the same.

41. Exhibit A is, *inter alia*, unconscionable and should be rendered void and unenforceable.

42. Prior to the filing of this action, Defendant has repeatedly through various correspondence and other actions taken the affirmative position that Exhibit A is valid and enforceable and that Defendant, thus, expects Plaintiff to render accountings and payments to Defendant thereunder.

43. Accordingly, a real and justiciable controversy currently exists between the parties arising out of the parties opposing contentions as to the validity and enforceability of Exhibit A and the parties legal rights and liabilities related thereto.

44. Plaintiff seeks, pursuant to N.C. Gen. Stat. § 1-253, *et seq.*, that this Court declare the rights, status and other legal relations concerning or related to the validity or invalidity, enforceability or unenforceability of Exhibit A and the parties' related rights and/or obligations.

45. Plaintiff specifically requests that this Court declare that the purported contract is null, void, invalid and unenforceable and that, therefore, Plaintiff has not duties or obligations thereunder.

WHEREFORE, Plaintiff respectfully requests the following relief from this Court:

(a) That judgment be entered for Plaintiff and against Defendant and that Exhibit A be declared null, void, invalid and unenforceable and that the Court declare that Plaintiff is in no way bound by any terms of Exhibit A;

(b)   For a trial by jury on all issues raised herein;

(c)   That all of the costs incurred by Plaintiff in prosecuting this action be taxed to the Defendant including reasonable attorneys' fees; and

(d)   That Plaintiff be awarded such other and further relief as the court deems just and proper.

Respectfully submitted, this the 21st day of November, 2007.

                                   THE BRAY LAW FIRM, PLLC

                                   William Bray
                                   North Carolina Bar No. 20494
                                   4701 Hedgemore Drive, Suite 816
                                   Charlotte, North Carolina 28209
                                   Phone: 704-523-7777
                                   Fax: 704-523-7780
                                   *Attorney for Plaintiff*

STATE OF NORTH CAROLINA

COUNTY OF ROWAN

VERIFICATION

Kelly Bires, being first duly sworn, deposes and states that he is the Plaintiff, and knows the contents of the foregoing Complaint; that the same are true to his own knowledge, except as to the matters and things therein stated on information and belief, and as to those matters, he believes them to be true.

_____
Kelly Bires

Mecklenburg County, North Carolina

Sworn to and subscribed before me this day by Kelly Bires.

Date: November 20, 2007

_Stacy D. Allison_
Notary Public
My Commission Expires: May 10, 2012

[SEAL]



Exhibit A

## Professional Driving and Sponsorship Agreement

This Professional Driving and Sponsorship Agreement ("Agreement") is made and entered into by and between Kelly Bires ("Driver") and WalTom Racing, LLC ("WalTom"), effective this 1st day of January, 2006.

WHEREAS, Driver desires to receive instruction, mentoring, and financial support from WalTom in the development and enhancement of his professional career in the racing industry;

WHEREAS, the nature and extent of Driver's success or failure as a professional driver cannot be pre-determined;

WHEREAS, WalTom is willing to accept the risk of failure and likewise benefit to the extent of Driver's long-term success;

WHEREAS, this Agreement is entered in the spirit of continued friendship, cooperation, and long-term mutual enrichment;

NOW, THEREFORE, for and in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Driver and WalTom agree as follows:

1. **Driver Salary:** WalTom agrees to pay Driver or his designee the sum of $2,800 every month while Driver is driving for WalTom on WalTom's ASA Late Model ("ASA") team in the ASA Late Model Challenge Series events, plus selected ASA Late Model North or South Series events, and/or other selected events. From event purse monies received, WalTom also agrees to pay Driver incentives equal to twenty percent (20%) for Driver's finishing positions of 10th or better and an additional $500 bonus for each race Driver wins. Driver shall not receive a percentage of year-end point fund monies or other year-end bonuses if any, except that Driver shall receive an additional $1,000 bonus if Driver wins the ASA Late Model Challenge Series points championship.

2. **Expenses to be paid by WalTom:** WalTom at its sole discretion and subject to termination at-will by WalTom at any time will continue to pay the expenses associated with running a competitive ASA racing team for Driver including but not limited to: the Driver Salary paid to Driver described in paragraph 1 above, pit equipment, race haulers, tools, cars, travel expenses, professional fees, personnel expenses, uniforms, rent, utilities and other costs and expenses associated therewith.

3. **Term:** The term of this Agreement shall commence January 1, 2006 and shall run through the last scheduled ASA race in 2006. WalTom shall have the option to renew this Agreement for the 2007 ASA racing season or any part thereof.

4. **Driving and Related Duties:**

    A. **Physical Condition and Conduct:** Driver agrees to serve WalTom and its race team diligently and faithfully, to keep in first class physical condition, and to observe and comply with all the team's rules and regulations. Driver agrees to conform to high standards of personal conduct (before, during and after working hours), fair play and good sportsmanship. Driver agrees to stay drug free and agrees to submit to random drug testing by WalTom or ASA. Driver also agrees to submit to physical or psychological examination at the expense of WalTom. Driver has no physical or mental defects which would prevent or impair the performance of Driver's skilled

Driver KB   WalTom TW

12/10/07 MON 13:45 FAX 8473290830       SELEXLLCES INC.                                    ☒015

services as a professional driver for WalTom. Driver is capable of and will perform race car driving and such other duties as may be required under this Agreement with expertise, diligence and fidelity.

B. <u>Promotion</u>: Driver agrees to cooperate with WalTom and to participate in any and all promotional activities of WalTom which, in the sole opinion of WalTom, will promote the race team, ASA, or professional racing.

5.  <u>Royalties</u>: In exchange for the Driver Salary payments made to Driver or his designee, the substantial costs and expenses advanced by WalTom for the benefit of Driver, for the advice, counsel, training and mentoring, and other valuable consideration, Driver agrees to make future payments to WalTom as follows:

For a period of ten (10) years after Driver ceases driving for WalTom Driver shall pay royalties to WalTom in the amount of twenty-five percent (25%) of all Future Race-Related Earnings defined as follows: Future Race-Related Earnings are any and all gross monies or other consideration earned or received at any time by or on behalf of Driver as a result of Driver's activities in and throughout the Racing Industries. As used herein, Racing Industries shall include without limitation all aspects of racing, driving, appearances, sponsorships, endorsements, managed investments, entertainment, amusement, music, recording, songwriting, publishing, internet publishing, television, motion picture, nightclub, concert, radio and theatrical industries, and shall also include any and all forms of advertising, merchandising, or other exploitations using Driver's name, photograph, voice, sound effects, likeness, caricatures, talents or materials. The term "activities" shall mean Driver's activities in any capacity whatsoever in the racing and entertainment industries, whether as speaker, alive performer, recording artist, musician, singer, songwriter, publisher, so-called "sideman," packager, owner of entertainment packages, producer, actor and shall also include the use of Driver's name, voice, likeness, etc. as aforesaid. Notwithstanding the foregoing for each year for which Royalties are due to WalTom the first $100,000 of Driver's Future Race-Related Earnings are exempt from Royalties.

It is the intent of the parties that WalTom be compensated out of Driver's Future Race-Related Earnings for a total of ten (10) years of Professional Race Car Driving ("PRCD"). PRCD is defined as full-time professional racing at the NASCAR Craftsman Truck, NASCAR Busch or NASCAR Nextel Cup levels or other driver compensation equivalent professional racing association. In the event that Driver does not race at the PRCD level for ten (10) consecutive years after driving for WalTom, then the ten (10) year period shall be extended until Driver's Future Race-Related Earnings exceeds $200,000 annually for a total of ten (10) years. See Exhibit A attached hereto for a sample calculation.

<u>Gross Monies or Other Consideration</u>: The term "gross monies or other consideration" shall include salaries, earnings, payments, fees, royalties, advances against future earnings, residuals, repeat and/or re-run fees, bonuses, shares of profit, shares of stock, partnership interests and any and all sums resulting from Driver's activities and uses of the results and proceeds thereof, payments for termination of Driver's activities, payments to refrain from any such activities and payments in connection with the settlement or other disposition of any dispute concerning said activities, which are earned or received directly or indirectly by Driver or Driver's heirs, executors, administrators or assigns or by any other person, firm or corporation on my behalf. Driver also agrees that all gross monies or other consideration directly or indirectly earned or received by any corporation, partnership, trust, joint venture, association, proprietorship or other business entity in which driver has any direct or indirect interest or control shall be subject to royalties to WalTom.

Driver KB  WalTom PD.

2

6.  **Termination:** WalTom shall have the right to terminate this Agreement at any time, with or without cause. Driver may terminate his duties and obligations as ASA driver for the WalTom race team by 60-day prior written Notice as set forth in paragraph 10 below. Driver's obligations for Royalties under paragraph 5 above shall survive the termination of his driving responsibilities for WalTom.

7.  **Manner of Payments:** The Royalty payments shall be made on a quarterly basis. Each payment shall be accompanied by a reasonably detailed accounting statement indicating the amount and source of each item of gross income. Upon at least ten (10) days written notice, WalTom may inspect, audit and copy the books and records of Driver or any entity in which he has an interest or over which he has control which relate to monies received for Driver's activities which are subject hereto. Such audit will be conducted at the expense of WalTom at the location where such books and records are maintained. If WalTom's audit shows a discrepancy in Royalties due to WalTom, then Driver shall remit such amount due to WalTom within ten (10) days from request. Additionally, if the discrepancy in gross income or Royalties due to WalTom exceeds 5% of the amount indicated on the detailed accounting statement presented to WalTom, then Driver shall reimburse WalTom for the reasonable costs of said audit including accounting and/or legal fees within ten (10) days from request.

8.  **Independent Contractor:** Driver is an independent contractor and not an employee of WalTom. Driver and WalTom agree to be solely and independently responsible for the payment of all federal, state and local taxes, if any, on any monies paid or distributed pursuant to this Agreement.

9.  **Notice:** All Notices which either party shall be required or desire to give to the other hereunder shall be in writing and shall be served by personal delivery, or United States certified or registered mail, return receipt requested, addressed to the intended recipient at the following address or such other address as either party may designate by notice.

    To Driver:        (Address:   Kelly Bires
                                  4801 Easy Street #S
                                  Hartland, WI  53027

    To WalTom Racing:  Mr. John Mulvenna
                       Texor Petroleum
                       3340 S. Harlem Avenue
                       Riverside, IL 60546

    With cc to:        Mr. Faustin Pipal
                       Pipal & Berg, LLP
                       150 S. Wacker Drive
                       Suite 2650
                       Chicago, IL 60606

10. **Illinois Law Applies:** This Agreement shall be deemed to be executed in the State of Illinois and shall be construed in accordance with the laws of said State, and any action to enforce or interpret the terms hereof shall be brought exclusively in the courts of Cook County, IL. In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and provisions hereof.

                                                            Driver KB  WalTom JM

3

11. **Entire Agreement:** This Agreement is the entire agreement of the parties and supersedes any other or collateral agreement (oral or written) between the parties in any manner relating to the subject matter hereof. This Agreement may only be modified, altered or amended by an instrument in writing signed by the party sought to be charged.

12. **Attorney's Fees:** In the event of any dispute under or relating to the terms of this Agreement or the performance, breach, validity, construction, interpretation, execution or legality thereof, the prevailing party shall be entitled to recover any and all reasonable attorney's fees and other costs incurred with respect to such dispute.

13. **Pictures of Driver:** Driver agrees, beginning with the effective date hereof that current or future photographs, whether still or action, and motion pictures may be taken and any form of broadcasts or telecasts of Driver, individually or with others, may be made at such times or places as WalTom may designate and agrees that all rights therein and all right to Driver's name, voice, signature, biographical information and likeness shall belong to WalTom and that they may be used, reproduced, sold, licensed, or otherwise disseminated or published by WalTom or its licensees, assignees and/or other designees directly or indirectly in any medium whatsoever for any purpose (including but not limited to in broadcast, in print, on trading cards, posters and other merchandise of any kind, in electronics, in audio, in video or in connection with any media), in any manner and at any time, including after the term of this Agreement, that WalTom desires. Driver acknowledges that the foregoing rights include, without limitation, all related copyright, trademark, trade name, service mark, right of publicity and/or right of privacy rights. WalTom acknowledges that it shall not have any of the foregoing property rights in photographs or motion pictures taken or made after Driver is no longer driving for WalTom, except for royalty rights as described in paragraph 5 above.

14. **Injunctive Relief:** Driver has exceptional and unique skill and ability as a race car driver, and Driver's services to be rendered to WalTom are of a special and extraordinary character which gives Driver a peculiar value which cannot be reasonably or adequately compensated for by damages at law. Therefore, Driver agrees that in addition to other remedies, WalTom shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by Driver, including without limitation the right to enjoin Driver from driving for another ASA team or organization during the term of this Agreement.

15. **Driving for Others/Other Risky or Dangerous Sports:** Driver agrees that during the term hereof Driver will not drive for any other race team without the written consent of WalTom. Driver and WalTom recognize that Driver's participation in certain sports or activities may jeopardize his health and well-being. Accordingly, Driver agrees not to engage in motorcycle racing, hang gliding, wrestling, karate, tae kwon do, judo, football, skiing, hockey or any other sport or activity involving a substantial risk of personal injury.

16. **Assignment:** Driver agrees and understands that this Agreement may be assigned by WalTom, but not by Driver. Driver also agrees that his obligation for Royalties shall survive his death to the extent that his estate includes Future Racing Related Earnings.

17. **Attorney Review:** Driver acknowledges that he has been afforded the opportunity to seek, and in fact has sought, the advice of counsel in connection with this Agreement. Driver's counsel has had input into the composition of this Agreement. Driver and WalTom agree that there shall be no legal presumption imposed against either party for drafting this Agreement.

18. **Release of Liability for Personal Injury:** Driver hereby releases, discharges, and covenants not to sue WalTom, its owners, employees, agents and assigns from all liability to Driver, his heirs, next

Driver KB   WalTom [initials]

4

of kin, and assigns for any and all loss or damage and claims or demands thereof, on account of injury to the person or property or resulting death of Driver while Driver is engaged in the activities of operating a race car at a race event, practice or test.

Accepted and agreed to:

_____        2/7/06
Driver: Kelly Bires                    Date

Accepted and agreed to:

WalTom LLC
By: _Thom E. Gletsman_____

_Thomas E. Gletsman_
(Print Name)

Its: _managing member_                 2/9/06
(Title)                                Date

Driver _KB_  WalTom _TG_