IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KELLY BIRES, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | **CASE NO.** |
| v. ) | **1:07-CV-959-JAB-WWD** |
| ) | |
| WALTOM, LLC D/B/A WALTOM RACING, ) | |
| LLC, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

### DEFENDANT'S MOTION TO TRANSFER VENUE

Defendant, WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom") moves the Court to transfer venue of this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). WalTom bases this motion on Plaintiff's Complaint, WalTom's Memorandum of Law in support of this Motion, the Declaration of John Mulvenna (attached hereto as Exhibit A), and Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, http://www.uscourts.gov/caseload2007/tables/C05Mar07.pdf (last viewed January 4, 2008) (attached hereto as Exhibit B).

Under section 1404(a), a district court may transfer any action to any other district where the action might have been brought "for the convenience of the parties and witnesses, in the interest of justice." This case concerns the rights of the parties under a Professional Driving and Sponsorship Agreement (the "Agreement"). WalTom has a substantial relationship with the Northern District of Illinois in that its sole office is in that district, it maintains all of its records in that district, and the Agreement in question was drafted and executed in that district. Furthermore, the parties agreed to a forum selection clause which specifies that any action

regarding the interpretation or enforcement of the Agreement be brought in Cook County, Illinois.

WHEREFORE, WalTom respectfully requests that the Court grant this Motion to Transfer, transfer venue of this action to the Northern District of Illinois, and award Defendants such other and further relief as the Court deems just and proper.

This 25th day of January, 2008.

/s/ Christopher C. Lam
John H. Culver III
N.C. State Bar No. 17849
Christopher C. Lam
N.C. State Bar No. 28627
214 North Tryon Street, 47th Floor
Charlotte, NC  28202
Telephone:  704-331-7449
Facsimile:  704-353-3149
clam@kennedycovington.com
ATTORNEYS FOR DEFENDANT

OF COUNSEL:

KENNEDY COVINGTON LOBDELL & HICKMAN, LLP
Hearst Tower, 47th Floor
214 North Tryon Street
Charlotte, NC 28202
Telephone:  (704) 331-7400
Facsimile:  (704) 331-7598

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2008, I electronically filed the foregoing *DEFENDANT'S MOTION TO TRANSFER VENUE* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> William Bray
> The Bray Law Firm, PLLC
> 4701 Hedgemore Drive, Suite 816
> Charlotte, North Carolina 28209
> wbray@braylaw.com
> *Attorneys for Plaintiff*

I have also caused to be deposited a copy of the same in an official depository of the United States Postal Service in a postage-paid envelope addressed to Plaintiff's counsel at the above address.

This 25th day of January, 2008.

/s/ Christopher C. Lam
Christopher C. Lam

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KELLY BIRES,<br><br>            Plaintiff,<br><br>v.<br><br>WALTOM, LLC d/b/a WALTOM RACING, LLC,<br><br>            Defendant. | CASE NO.<br>1:07-CV-959-JAB-WWD |

**DECLARATION OF JOHN MULVENNA
IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE**

John Mulvenna, being duly sworn under oath deposes and states that the following facts are true and accurate to the best of his knowledge and belief:

1.  I am over the age of 21 and am under no legal disability.

2.  I make this affidavit based on my personal knowledge and in support of Defendant's Motion to Transfer Venue.

3.  I am a citizen and resident of the State of Illinois. I am General Manager of Defendant WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom"), an Illinois limited liability company with its principal place of business in Riverside, Illinois. Riverside, Illinois is in Cook County and Cook County is in the Northern District of Illinois.

4.  WalTom is managed in Illinois. Both of its Managing Members, Walter Gleitsman and Tom Gleitsman, reside in Cook County, Illinois.

EXHIBIT A

5. WalTom was formed in 2000 by Walter and Tom Gleitsman to field an auto racing team in the ASA Series. WalTom opened its first race shop in Burr Ridge, Illinois in 2000. WalTom then opened a second race shop in Pewaukee, Wisconsin in December 2003.

6. In 2004, WalTom began a Driver Development Program to educate and train young drivers who demonstrated a superior ability and talent in motorsports.

7. WalTom's first Development Driver, who raced in the re-named ASA Late Model Series, was Stephen Leicht. Stephen raced for WalTom during the 2004 and 2005 seasons and won the 2005 ASA Late Model Series National Championship.

8. After Stephen signed a contract with Robert Yates Racing, WalTom began searching for its next Development Driver and, among other efforts, hosted a driving test in Hudson, North Carolina for several driver candidates.

9. Following this testing in late 2005, WalTom selected Plaintiff, Kelly Bires, to be its driver for the 2006 season. Plaintiff accepted WalTom's offer to be its driver.

10. WalTom then began contract negotiations with Plaintiff and Plaintiff, a Wisconsin native, leased an apartment in Hartland, Wisconsin close to WalTom's race shop.

11. The Professional Driving and Sponsorship Agreement between WalTom and Plaintiff (the "Agreement") was drafted by WalTom's counsel, Faustin Pipal, Esq., an Illinois lawyer, in conjunction with me.

12. Upon information and belief, Plaintiff's attorney, who reviewed and advised Plaintiff about the Agreement, resides in Wisconsin.

13. In addition to Plaintiff and his attorney, the persons involved in discussions and negotiations relating to the Agreement were Tom Gleitsman and myself.

14. The Agreement was first presented to Plaintiff by WalTom in Indiana at the ASA Late Model Series Awards Banquet. All other discussions and negotiations related to the Agreement took place in Illinois or Wisconsin.

15. Plaintiff executed the Agreement in Wisconsin on February 7, 2006, and then sent the signed Agreement to WalTom in Illinois. WalTom executed the Agreement in Illinois on February 9, 2006. A copy of the executed Agreement is attached hereto as Exhibit 1.

16. No portion of the Agreement was negotiated, drafted, executed, or amended in North Carolina.

17. Pursuant to the Agreement, WalTom paid Plaintiff a monthly salary plus a percentage of race winnings and monetary bonuses for race victories. WalTom also paid all of the expenses associated with running a competitive racing team including, but not limited to, pit equipment, race haulers, tools, cars, travel expenses, professional fees, personnel expenses, uniforms, rent, utilities, and other associated costs and expenses. Plaintiff was paid during the term of the Agreement with checks drawn from WalTom's bank in Illinois that were either delivered to the Pewaukee race shop or mailed to Plaintiff at his address in Wisconsin.

18. All of WalTom's corporate records are in Illinois.

19. All of the documents in possession of WalTom relevant to the negotiations and execution of the Agreement are in Illinois.

20.     Potential witnesses in this matter may include other WalTom employees, all of whom reside in Illinois or Wisconsin.

21.     Plaintiff lived in Wisconsin before he began driving for Waltom and for the entire time he drove for WalTom. Plaintiff did not move to North Carolina until after he stopped driving for WalTom.

22.     Plaintiff competed for WalTom during the 2006 race season and competed in races in Wisconsin, Illinois, Michigan, New York, Pennsylvania, Minnesota, Iowa, Tennessee, Texas, Missouri, and Indiana. Plaintiff did not race for WalTom in North Carolina during the 2006 racing season.

23.     The Agreement contains a choice of law and forum selection provision – which specifies Illinois – that reads:

> <u>Illinois Law Applies</u>:  This Agreement shall be deemed to be executed in the State of Illinois and shall be construed in accordance with the laws of said State, and any action to enforce or interpret the terms hereof shall be brought exclusively in the courts of Cook County, IL. In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and provisions hereof.

24.     During the contract negotiations, Plaintiff requested and received changes to the Agreement, and never made any objection to the forum selection clause (or choice of law provision).

25.     WalTom has fully performed its obligations under the Agreement.

26.     The Agreement also obligates Plaintiff to pay certain royalties to WalTom, but because Plaintiff has so far refused to do so, not even this part of the Agreement has been performed in North Carolina.

27.     The only connection between the Agreement and North Carolina is Plaintiff's current residence.

28.     Prior to this lawsuit, the only interaction between WalTom and Plaintiff related to the Agreement that involved North Carolina was the driver testing held in Hudson, North Carolina in October 2005. The Driver Test Sessions took place before Plaintiff was selected to drive for WalTom and before any contractual negotiations had commenced.

29.     Upon information and belief, Plaintiff suffers from no infirmities or financial hardships that would impede his ability to travel to Illinois as he recently signed a multi-year lucrative contract with JTG/Wood Brothers.

***************************

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of January, 2008.

_____
JOHN MULVENNA

11/16/2006 13:43 17084421128 TEXOR PETROLEUM PAGE 01/06



EXHIBIT 1.

## Professional Driving and Sponsorship Agreement

This Professional Driving and Sponsorship Agreement ("Agreement") is made and entered into by and between Kelly Bires ("Driver") and WalTom Racing, LLC ("WalTom"), effective this 1st day of January, 2006.

WHEREAS, Driver desires to receive instruction, mentoring, and financial support from WalTom in the development and enhancement of his professional career in the racing industry;

WHEREAS, the nature and extent of Driver's success or failure as a professional driver cannot be pre-determined;

WHEREAS, WalTom is willing to accept the risk of failure and likewise benefit to the extent of Driver's long-term success;

WHEREAS, this Agreement is entered in the spirit of continued friendship, cooperation, and long-term mutual enrichment;

NOW, THEREFORE, for and in consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Driver and WalTom agree as follows:

1. Driver Salary: WalTom agrees to pay Driver or his designee the sum of $2,800 every month while Driver is driving for WalTom on WalTom's ASA Late Model ("ASA") team in the ASA Late Model Challenge Series events, plus selected ASA Late Model North or South Series events, and/or other selected events. From event purse monies received, WalTom also agrees to pay Driver incentives equal to twenty percent (20%) for Driver's finishing positions of 10th or better and an additional $500 bonus for each race Driver wins. Driver shall not receive a percentage of year-end point fund monies or other year-end bonuses if any, except that Driver shall receive an additional $1,000 bonus if Driver wins the ASA Late Model Challenge Series points championship.

2. Expenses to be paid by WalTom: WalTom at its sole discretion and subject to termination at-will by WalTom at any time will continue to pay the expenses associated with running a competitive ASA racing team for Driver including but not limited to: the Driver Salary paid to Driver described in paragraph 1 above, pit equipment, race haulers, tools, cars, travel expenses, professional fees, personnel expenses, uniforms, rent, utilities and other costs and expenses associated therewith.

3. Term: The term of this Agreement shall commence January 1, 2006 and shall run through the last scheduled ASA race in 2006. WalTom shall have the option to renew this Agreement for the 2007 ASA racing season or any part thereof.

4. Driving and Related Duties:

   A. Physical Condition and Conduct: Driver agrees to serve WalTom and its race team diligently and faithfully, to keep in first class physical condition, and to observe and comply with all the team's rules and regulations. Driver agrees to conform to high standards of personal conduct (before, during and after working hours), fair play and good sportsmanship. Driver agrees to stay drug free and agrees to submit to random drug testing by WalTom or ASA. Driver also agrees to submit to physical or psychological examination at the expense of WalTom. Driver has no physical or mental defects which would prevent or impair the performance of Driver's skilled

1                                                               Driver KB  WalTom ___

services as a professional driver for WalTom. Driver is capable of and will perform race car driving and such other duties as may be required under this Agreement with expertise, diligence and fidelity.

B. <u>Promotion:</u> Driver agrees to cooperate with WalTom and to participate in any and all promotional activities of WalTom which, in the sole opinion of WalTom, will promote the race team, ASA, or professional racing.

5.  <u>Royalties:</u> In exchange for the Driver Salary payments made to Driver or his designee, the substantial costs and expenses advanced by WalTom for the benefit of Driver, for the advice, counsel, training and mentoring, and other valuable consideration, Driver agrees to make future payments to WalTom as follows:

For a period of ten (10) years after Driver ceases driving for WalTom Driver shall pay royalties to WalTom in the amount of twenty-five percent (25%) of all Future Race-Related Earnings defined as follows: Future Race-Related Earnings are any and all gross monies or other consideration earned or received at any time by or on behalf of Driver as a result of Driver's activities in and throughout the Racing Industries. As used herein, Racing Industries shall include without limitation all aspects of racing, driving, appearances, sponsorships, endorsements, managed investments, entertainment, amusement, music, recording, songwriting, publishing, internet publishing, television, motion picture, nightclub, concert, radio and theatrical industries, and shall also include any and all forms of advertising, merchandising, or other exploitations using Driver's name, photograph, voice, sound effects, likeness, caricatures, talents or materials. The term "activities" shall mean Driver's activities in any capacity whatsoever in the racing and entertainment industries, whether as speaker, a live performer, recording artist, musician, singer, songwriter, publisher, so-called "sideman," packager, owner of entertainment packages, producer, actor and shall also include the use of Driver's name, voice, likeness, etc. as aforesaid. Notwithstanding the foregoing for each year for which Royalties are due to WalTom the first $100,000 of Driver's Future Race-Related Earnings are exempt from Royalties.

It is the intent of the parties that WalTom be compensated out of Driver's Future Race-Related Earnings for a total of ten (10) years of Professional Race Car Driving ("PRCD"). PRCD is defined as full-time professional racing at the NASCAR Craftsman Truck, NASCAR Busch or NASCAR Nextel Cup levels or other driver compensation equivalent professional racing association. In the event that Driver does not race at the PRCD level for ten (10) consecutive years after driving for WalTom, then the ten (10) year period shall be extended until Driver's Future Race-Related Earnings exceeds $200,000 annually for a total of ten (10) years. See Exhibit A attached hereto for a sample calculation.

<u>Gross Monies or Other Consideration:</u> The term "gross monies or other consideration" shall include salaries, earnings, payments, fees, royalties, advances against future earnings, residuals, repeat and/or re-run fees, bonuses, shares of profit, shares of stock, partnership interests and any and all sums resulting from Driver's activities and uses of the results and proceeds thereof, payments for termination of Driver's activities, payments to refrain from any such activities and payments in connection with the settlement or other disposition of any dispute concerning said activities, which are earned or received directly or indirectly by Driver or Driver's heirs, executors, administrators or assigns or by any other person, firm or corporation on my behalf. Driver also agrees that all gross monies or other consideration directly or indirectly earned or received by any corporation, partnership, trust, joint venture, association, proprietorship or other business entity in which driver has any direct or indirect interest or control shall be subject to royalties to WalTom.

2                                    Driver KB  WalTom ____

6. <u>Termination:</u> WalTom shall have the right to terminate this Agreement at any time, with or without cause. Driver may terminate his duties and obligations as ASA driver for the WalTom race team by 60-day prior written Notice as set forth in paragraph 10 below. Driver's obligations for Royalties under paragraph 5 above shall survive the termination of his driving responsibilities for WalTom.

7. <u>Manner of Payments:</u> The Royalty payments shall be made on a quarterly basis. Each payment shall be accompanied by a reasonably detailed accounting statement indicating the amount and source of each item of gross income. Upon at least ten (10) days written notice, WalTom may inspect, audit and copy the books and records of Driver or any entity in which he has an interest or over which he has control which relate to monies received for Driver's activities which are subject hereto. Such audit will be conducted at the expense of WalTom at the location where such books and records are maintained. If WalTom's audit shows a discrepancy in Royalties due to WalTom, then Driver shall remit such amount due to WalTom within ten (10) days from request. Additionally, if the discrepancy in gross income or Royalties due to WalTom exceeds 5% of the amount indicated on the detailed accounting statement presented to WalTom, then Driver shall reimburse WalTom for the reasonable costs of said audit including accounting and/or legal fees within ten (10) days from request.

8. <u>Independent Contractor:</u> Driver is an independent contractor and not an employee of WalTom. Driver and WalTom agree to be solely and independently responsible for the payment of all federal, state and local taxes, if any, on any monies paid or distributed pursuant to this Agreement.

9. <u>Notice:</u> All Notices which either party shall be required or desire to give to the other hereunder shall be in writing and shall be served by personal delivery, or United States certified or registered mail, return receipt requested, addressed to the intended recipient at the following address or such other address as either party may designate by notice.

    To Driver:        (Address:   _Kelly Bires_
                                  _4821 Easy Street #5_
                                  _Hartland, WI  53029_

    To WalTom Racing:   Mr. John Mulvenna
                        Texor Petroleum
                        3340 S. Harlem Avenue
                        Riverside, IL 60546

    With cc to:         Mr. Faustin Pipal
                        Pipal & Berg, LLP
                        150 S. Wacker Drive
                        Suite 2650
                        Chicago, IL 60606

10. <u>Illinois Law Applies:</u> This Agreement shall be deemed to be executed in the State of Illinois and shall be construed in accordance with the laws of said State, and any action to enforce or interpret the terms hereof shall be brought exclusively in the courts of Cook County, IL. In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and provisions hereof.

3

Driver __KB__ WalTom ____

11. **Entire Agreement:** This Agreement is the entire agreement of the parties and supersedes any other or collateral agreement (oral or written) between the parties in any manner relating to the subject matter hereof. This Agreement may only be modified, altered or amended by an instrument in writing signed by the party sought to be charged.

12. **Attorney's Fees:** In the event of any dispute under or relating to the terms of this Agreement or the performance, breach, validity, construction, interpretation, execution or legality thereof, the prevailing party shall be entitled to recover any and all reasonable attorney's fees and other costs incurred with respect to such dispute.

13. **Pictures of Driver:** Driver agrees, beginning with the effective date hereof that current or future photographs, whether still or action, and motion pictures may be taken and any form of broadcasts or telecasts of Driver, individually or with others, may be made at such times or places as WalTom may designate and agrees that all rights therein and all right to Driver's name, voice, signature, biographical information and likeness shall belong to WalTom and that they may be used, reproduced, sold, licensed, or otherwise disseminated or published by WalTom or its licensees, assignees and/or other designees directly or indirectly in any medium whatsoever for any purpose (including but not limited to in broadcast, in print, on trading cards, posters and other merchandise of any kind, in electronics, in audio, in video or in connection with any media), in any manner and at any time, including after the term of this Agreement, that WalTom desires. Driver acknowledges that the foregoing rights include, without limitation, all related copyright, trademark, trade name, service mark, right of publicity and/or right of privacy rights. WalTom acknowledges that it shall not have any of the foregoing property rights in photographs or motion pictures taken or made after Driver is no longer driving for WalTom, except for royalty rights as described in paragraph 5 above.

14. **Injunctive Relief:** Driver has exceptional and unique skill and ability as a race car driver, and Driver's services to be rendered to WalTom are of a special and extraordinary character which gives Driver a peculiar value which cannot be reasonably or adequately compensated for by damages at law. Therefore, Driver agrees that, in addition to other remedies, WalTom shall be entitled to injunctive and other equitable relief to prevent a breach of this Agreement by Driver, including without limitation the right to enjoin Driver from driving for another ASA team or organization during the term of this Agreement.

15. **Driving for Others/Other Risky or Dangerous Sports:** Driver agrees that during the term hereof Driver will not drive for any other race team without the written consent of WalTom. Driver and WalTom recognize that Driver's participation in certain sports or activities may jeopardize his health and well-being. Accordingly, Driver agrees not to engage in motorcycle racing, hang gliding, wrestling, karate, tae kwon do, judo, football, skiing, hockey or any other sport or activity involving a substantial risk of personal injury.

16. **Assignment:** Driver agrees and understands that this Agreement may be assigned by WalTom, but not by Driver. Driver also agrees that his obligation for Royalties shall survive his death to the extent that his estate includes Future Racing-Related Earnings.

17. **Attorney Review:** Driver acknowledges that he has been afforded the opportunity to seek, and in fact has sought, the advice of counsel in connection with this Agreement. Driver's counsel has had input into the composition of this Agreement. Driver and WalTom agree that there shall be no legal presumption imposed against either party for drafting this Agreement.

18. **Release of Liability for Personal Injury:** Driver hereby releases, discharges, and covenants not to sue WalTom, its owners, employees, agents and assigns from all liability to Driver, his heirs, next

4                                                       Driver KB  WalTom ___

of kin, and assigns for any and all loss or damage, and claims or demands thereof, on account of injury to the person or property or resulting death of Driver while Driver is engaged in the activities of operating a race car at a race event, practice or test.

Accepted and agreed to:

_____  ___2/7/06___
Driver: Kelly Bires                   Date

Accepted and agreed to:

WalTom LLC

By: _Thom E. Bletsm_____
    _Thoms E. Bleitsman_____
    (Print Name)

Its:
    _MANAGING MEMBER_____  ___2/8/06___
    (Title)                              Date

5                                      Driver _KB_ WalTom ___

## Exhibit A
### Sample Royalty Scenarios

| Future Earnings: | Royalty |
|---|---|
| $0 to $100,000 | 0% |
| over $100,000 | 25% |

#### Example 1: Top Ten Driver

| | YR | Driver Salary | % of Purse | Driver Winnings (1) | Driver Gross Earnings (2) | Royalties | Driver Net Earnings | % Races Entered |
|---|---|---|---|---|---|---|---|---|
| 1/3 - PT Busch | 1 | $ 100,000 | 35% | $ 140,073 | $ 240,073 | $ 35,018 | $ 205,054 | 33% |
| FT - Busch | 2 | $ 175,000 | 35% | $ 445,666 | $ 620,686 | $ 130,171 | $ 490,514 | 100% |
| FT - Busch | 3 | $ 175,000 | 35% | $ 467,970 | $ 642,970 | $ 135,742 | $ 507,227 | 100% |
| FT - Cup | 4 | $ 1,000,000 | 40% | $ 2,945,658 | $ 3,945,658 | $ 961,414 | $ 2,984,243 | 100% |
| FT - Cup | 5 | $ 1,000,000 | 40% | $ 3,092,941 | $ 4,092,941 | $ 998,235 | $ 3,094,706 | 100% |
| FT - Cup | 6 | $ 1,000,000 | 40% | $ 3,247,588 | $ 4,247,588 | $ 1,036,897 | $ 3,210,691 | 100% |
| FT - Cup | 7 | $ 1,000,000 | 40% | $ 3,409,967 | $ 4,409,967 | $ 1,077,492 | $ 3,332,475 | 100% |
| FT - Cup | 8 | $ 1,000,000 | 40% | $ 3,580,466 | $ 4,580,466 | $ 1,120,116 | $ 3,460,349 | 100% |
| FT - Cup | 9 | $ 1,000,000 | 40% | $ 3,759,489 | $ 4,759,489 | $ 1,164,872 | $ 3,594,617 | 100% |
| FT - Cup | 10 | $ 1,000,000 | 40% | $ 3,947,463 | $ 4,947,463 | $ 1,211,866 | $ 3,735,597 | 100% |
| | | | | | $ 32,487,299 | $ 7,871,825 | $ 24,615,474 | |

#### Example 2: Top Twenty Driver

| | YR | Driver Salary | % of Purse | Driver Winnings (1) | Driver Gross Earnings (2) | Royalties | Driver Net Earnings | % Races Entered |
|---|---|---|---|---|---|---|---|---|
| 1/3 - PT Busch | 1 | $ 100,000 | 35% | $ 109,511 | $ 209,511 | $ 27,378 | $ 182,133 | 33% |
| FT - Busch | 2 | $ 175,000 | 35% | $ 348,445 | $ 523,445 | $ 105,861 | $ 417,584 | 100% |
| FT - Busch | 3 | $ 175,000 | 35% | $ 365,867 | $ 540,867 | $ 110,217 | $ 430,651 | 100% |
| FT - Cup | 4 | $ 1,000,000 | 40% | $ 2,445,355 | $ 3,445,355 | $ 836,339 | $ 2,609,017 | 100% |
| FT - Cup | 5 | $ 1,000,000 | 40% | $ 2,567,623 | $ 3,567,623 | $ 866,906 | $ 2,700,717 | 100% |
| FT - Cup | 6 | $ 1,000,000 | 40% | $ 2,696,004 | $ 3,696,004 | $ 899,001 | $ 2,797,003 | 100% |
| FT - Cup | 7 | $ 1,000,000 | 40% | $ 2,830,805 | $ 3,830,805 | $ 932,701 | $ 2,898,103 | 100% |
| FT - Cup | 8 | $ 1,000,000 | 40% | $ 2,972,345 | $ 3,972,345 | $ 968,086 | $ 3,004,259 | 100% |
| FT - Cup | 9 | $ 1,000,000 | 40% | $ 3,120,962 | $ 4,120,962 | $ 1,005,241 | $ 3,115,722 | 100% |
| FT - Cup | 10 | $ 1,000,000 | 40% | $ 3,277,010 | $ 4,277,010 | $ 1,044,253 | $ 3,232,758 | 100% |
| | | | | | $ 28,183,929 | $ 6,795,982 | $ 21,387,947 | |

#### Example 3: Top Thirty Driver

| | YR | Driver Salary | % of Purse | Driver Winnings (1) | Driver Gross Earnings (2) | Royalties | Driver Net Earnings | % Races Entered |
|---|---|---|---|---|---|---|---|---|
| 1/3 - PT Busch | 1 | $ 100,000 | 35% | $ 59,849 | $ 159,849 | $ 14,962 | $ 144,887 | 33% |
| FT - Busch | 2 | $ 175,000 | 35% | $ 190,429 | $ 365,429 | $ 66,357 | $ 299,072 | 100% |
| FT - Busch | 3 | $ 175,000 | 35% | $ 199,951 | $ 374,951 | $ 68,738 | $ 306,213 | 100% |
| FT - Cup | 4 | $ 1,000,000 | 40% | $ 2,062,471 | $ 3,062,471 | $ 740,618 | $ 2,321,853 | 100% |
| FT - Cup | 5 | $ 1,000,000 | 40% | $ 2,165,595 | $ 3,165,595 | $ 766,399 | $ 2,399,196 | 100% |
| FT - Cup | 6 | $ 1,000,000 | 40% | $ 2,273,874 | $ 3,273,874 | $ 793,469 | $ 2,480,406 | 100% |
| FT - Cup | 7 | $ 1,000,000 | 40% | $ 2,387,568 | $ 3,387,568 | $ 821,892 | $ 2,565,676 | 100% |
| FT - Cup | 8 | $ 1,000,000 | 40% | $ 2,506,946 | $ 3,506,946 | $ 851,737 | $ 2,655,210 | 100% |
| FT - Cup | 9 | $ 1,000,000 | 40% | $ 2,632,294 | $ 3,632,294 | $ 883,073 | $ 2,749,220 | 100% |
| FT - Cup | 10 | $ 1,000,000 | 40% | $ 2,763,908 | $ 3,763,908 | $ 915,977 | $ 2,847,931 | 100% |
| FT - Cup | 11 | $ 1,000,000 | 40% | $ 2,902,104 | $ 3,902,104 | $ 950,526 | $ 2,951,578 | 100% |
| | | | | | $ 28,594,989 | $ 6,873,747 | $ 21,721,242 | |

Note: In this example Drivers Gross Earnings did not exceed $200,000 in YR 1. The royalty provision would extend the royalty period 1 additional year for a total of 11 years.

#### Assumptions:

| Historical Info: | Avg. Busch (2005) | Avg. Cup (2005) | |
|---|---|---|---|
| Top Ten Driver | $ 1,100,000 | $ 5,770,000 | [1-10: Avg Winnings] |
| Top Twenty Driver | $ 860,000 | $ 4,790,000 | [11-20: Avg Winnings] |
| Top Thirty Driver | $ 470,000 | $ 4,040,000 | [21-30: Avg Winnings] |

(1) Average winnings (purse) assumed to increase 5% per year.
(2) Driver Gross Earnings does not include income from additional sources; PSA's, endorsements, royalties, etc.
PT = Part-Time; FT = Full-Time

Note: The information provided in this Exhibit A is provided for sample calculation purposes only. WalTom does not in any way warranty the accuracy or guarantee that these financial results will actually occur for Driver's or any other person's benefit.

Table C-5.
U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2007

| Circuit and District | Total Cases | | No Court Action | | Before Pretrial | | Court Action | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months |
| TOTAL | 197,025 | 7.4 | 45,628 | 6.3 | 124,659 | 7.1 | 23,553 | 15.4 | 3,185 | 23.8 |
| DC | 2,127 | 10.7 | 836 | 11.9 | 1,240 | 9.9 | 28 | 18.0 | 23 | 43.0 |
| 1ST | 5,175 | 9.3 | 1,969 | 7.9 | 2,210 | 8.7 | 853 | 16.0 | 143 | 26.5 |
| ME | 346 | 6.4 | 163 | 5.6 | 157 | 7.9 | 12 | 12.0 | 14 | 15.5 |
| MA | 2,763 | 9.3 | 1,363 | 7.3 | 957 | 8.2 | 359 | 16.8 | 84 | 28.0 |
| NH | 404 | 8.5 | 92 | 3.9 | 133 | 5.9 | 174 | 13.9 | 5 | - |
| RI | 528 | 8.8 | 137 | 6.8 | 246 | 7.0 | 132 | 12.9 | 13 | 22.0 |
| PR | 1,134 | 12.8 | 214 | 6.1 | 717 | 10.1 | 176 | 22.8 | 27 | 33.0 |
| 2ND | 18,643 | 10.5 | 5,220 | 7.3 | 10,780 | 10.5 | 2,349 | 15.2 | 294 | 29.7 |
| CT | 2,045 | 11.5 | 1,319 | 8.8 | 602 | 16.4 | 69 | 24.0 | 55 | 33.0 |
| NY,N | 1,014 | 12.5 | 218 | 6.2 | 488 | 10.7 | 286 | 19.0 | 22 | 36.0 |
| NY,E | 5,083 | 10.0 | 1,020 | 6.2 | 3,131 | 9.7 | 863 | 15.8 | 69 | 32.7 |
| NY,S | 8,898 | 9.0 | 2,332 | 7.4 | 5,470 | 9.5 | 969 | 12.7 | 127 | 26.3 |
| NY,W | 1,343 | 12.0 | 302 | 6.6 | 876 | 12.5 | 152 | 26.2 | 13 | 48.0 |
| VT | 260 | 9.5 | 29 | 5.0 | 213 | 9.4 | 10 | 23.0 | 8 | - |
| 3RD | 35,939 | 1.0 | 3,515 | 4.3 | 29,233 | 1.0 | 2,897 | 13.6 | 294 | 24.2 |
| DE | 722 | 14.3 | 97 | 7.0 | 514 | 12.5 | 73 | 24.9 | 38 | 26.7 |
| NJ | 5,466 | 7.3 | 1,875 | 5.2 | 2,129 | 5.5 | 1,398 | 14.3 | 64 | 31.3 |
| PA,E | 25,923 | 1.0 | 596 | 2.8 | 23,937 | 1.0 | 1,275 | 10.3 | 115 | 17.3 |
| PA,M | 1,515 | 7.5 | 477 | 5.5 | 938 | 7.0 | 62 | 20.4 | 38 | 24.0 |
| PA,W | 2,018 | 8.5 | 440 | 4.9 | 1,507 | 9.5 | 32 | 25.0 | 39 | 27.0 |
| VI | 295 | 19.9 | 30 | 6.0 | 208 | 15.5 | 57 | 32.4 | - | - |
| 4TH | 12,367 | 7.0 | 3,420 | 6.0 | 7,553 | 8.3 | 1,185 | 9.2 | 209 | 19.2 |
| MD | 2,622 | 7.0 | 1,167 | 6.5 | 1,162 | 6.8 | 250 | 8.4 | 43 | 23.5 |
| NC,E | 940 | 11.4 | 398 | 8.1 | 528 | 12.0 | 5 | - | 9 | - |
| NC,M | 720 | 10.7 | 233 | 7.1 | 357 | 12.8 | 118 | 11.2 | 12 | 21.0 |
| NC,W | 929 | 9.3 | 359 | 11.3 | 456 | 5.3 | 100 | 18.0 | 14 | 23.0 |
| SC | 2,696 | 9.4 | 383 | 3.8 | 2,101 | 10.0 | 163 | 12.5 | 49 | 26.0 |
| VA,E | 2,323 | 5.8 | 512 | 3.9 | 1,253 | 5.6 | 514 | 7.8 | 44 | 10.0 |
| VA,W | 704 | 8.2 | 172 | 7.8 | 495 | 9.0 | 18 | 9.0 | 19 | 16.0 |
| WV,N | 403 | 11.8 | 135 | 10.7 | 255 | 12.6 | 9 | - | 4 | - |
| WV,S | 1,030 | 6.3 | 61 | 3.8 | 946 | 6.4 | 8 | - | 15 | 21.5 |

55


EXHIBIT B

Table C-5. (March 31, 2007—Continued)

| Circuit and District | Total Cases | | No Court Action | | Before Pretrial | | Court Action During or After Pretrial | | Trial | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **20,426** | **8.9** | **4,773** | **6.0** | **12,630** | **7.1** | **2,593** | **13.0** | **430** | **21.5** |
| LA,E | 4,203 | 6.3 | 169 | 3.8 | 2,441 | 4.3 | 1,519 | 15.4 | 74 | 20.4 |
| LA,M | 723 | 10.9 | 267 | 6.3 | 416 | 11.5 | 27 | 24.5 | 13 | 23.0 |
| LA,W | 1,544 | 11.0 | 505 | 7.1 | 955 | 12.2 | 43 | 23.0 | 41 | 29.0 |
| MS,N | 845 | 11.8 | 158 | 5.5 | 545 | 11.4 | 115 | 17.4 | 27 | 27.7 |
| MS,S | 2,262 | 8.5 | 1,426 | 8.6 | 748 | 11.5 | 43 | 20.5 | 45 | 18.3 |
| TX,N | 2,899 | 7.9 | 144 | 6.7 | 2,701 | 7.9 | 4 | - | 50 | 21.7 |
| TX,E | 1,645 | 9.5 | 336 | 4.6 | 1,223 | 9.3 | 44 | 13.0 | 42 | 19.0 |
| TX,S | 4,127 | 7.6 | 1,053 | 4.4 | 2,208 | 7.2 | 776 | 10.9 | 90 | 20.6 |
| TX,W | 2,178 | 8.1 | 715 | 6.4 | 1,393 | 8.6 | 22 | 15.0 | 48 | 17.4 |
| **6TH** | **18,811** | **11.8** | **3,642** | **5.8** | **11,440** | **12.7** | **3,430** | **13.1** | **299** | **24.8** |
| KY,E | 1,605 | 10.6 | 195 | 6.3 | 1,377 | 10.2 | 14 | 21.0 | 19 | 19.5 |
| KY,W | 1,155 | 9.0 | 240 | 8.9 | 789 | 8.5 | 110 | 17.3 | 16 | 19.0 |
| MI,E | 3,620 | 8.0 | 787 | 4.8 | 1,286 | 6.6 | 1,479 | 13.8 | 68 | 24.0 |
| MI,W | 888 | 7.8 | 146 | 3.7 | 717 | 8.0 | 9 | - | 16 | 20.0 |
| OH,N | 6,384 | 19.2 | 845 | 4.7 | 4,652 | 19.0 | 837 | 10.0 | 50 | 19.7 |
| OH,S | 2,203 | 12.7 | 873 | 8.9 | 796 | 12.0 | 491 | 14.9 | 43 | 25.5 |
| TN,E | 1,034 | 12.0 | 153 | 7.9 | 397 | 9.9 | 450 | 16.9 | 34 | 25.5 |
| TN,M | 1,028 | 10.9 | 64 | 4.2 | 930 | 10.0 | 9 | - | 25 | 22.0 |
| TN,W | 894 | 12.5 | 339 | 10.4 | 496 | 12.9 | 31 | 24.0 | 28 | 29.4 |
| **7TH** | **12,776** | **7.6** | **3,823** | **5.7** | **7,270** | **8.0** | **1,441** | **11.7** | **242** | **27.5** |
| IL,N | 6,431 | 6.3 | 2,270 | 5.7 | 3,525 | 6.4 | 526 | 12.2 | 110 | 28.7 |
| IL,C | 702 | 10.8 | 296 | 8.2 | 380 | 10.5 | 11 | 23.5 | 15 | 28.0 |
| IL,S | 880 | 8.1 | 243 | 5.3 | 605 | 8.6 | 15 | 16.4 | 17 | 20.5 |
| IN,N | 1,246 | 10.1 | 292 | 6.6 | 646 | 10.2 | 282 | 14.7 | 26 | 22.0 |
| IN,S | 1,942 | 10.8 | 500 | 8.5 | 1,127 | 10.1 | 293 | 13.9 | 22 | 23.4 |
| WI,E | 1,087 | 8.3 | 171 | 3.3 | 787 | 9.2 | 96 | 15.3 | 33 | 66.4 |
| WI,W | 488 | 4.1 | 51 | 1.4 | 200 | 3.3 | 218 | 6.0 | 19 | 11.4 |
| **8TH** | **14,705** | **12.1** | **3,905** | **5.5** | **6,052** | **9.6** | **4,490** | **36.6** | **258** | **21.7** |
| AR,E | 1,242 | 13.5 | 269 | 12.3 | 904 | 13.3 | 8 | - | 61 | 20.0 |
| AR,W | 705 | 10.3 | 32 | 6.7 | 622 | 10.7 | 28 | 1.0 | 23 | 14.0 |
| IA,N | 474 | 9.8 | 53 | 5.5 | 399 | 9.6 | 7 | - | 15 | 20.5 |
| IA,S | 601 | 10.9 | 95 | 7.2 | 329 | 8.8 | 157 | 15.0 | 20 | 21.5 |
| MN | 6,786 | 23.7 | 1,748 | 3.4 | 780 | 5.3 | 4,229 | 36.2 | 29 | 28.5 |
| MO,E | 1,918 | 8.0 | 725 | 8.0 | 1,151 | 7.4 | 4 | - | 38 | 20.0 |
| MO,W | 1,636 | 8.7 | 797 | 7.0 | 805 | 9.0 | 13 | 21.0 | 21 | 23.5 |
| NE | 898 | 11.6 | 33 | 1.0 | 799 | 11.3 | 31 | 20.0 | 35 | 20.5 |
| ND | 204 | 12.4 | 71 | 8.7 | 118 | 12.0 | 4 | - | 11 | 25.0 |
| SD | 241 | 10.8 | 82 | 10.0 | 145 | 10.7 | 9 | - | 5 | - |

56

## Table C-5. (March 31, 2007—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **9TH** | **28,376** | **8.8** | **10,250** | **6.5** | **16,000** | **8.9** | **1,643** | **13.4** | **483** | **23.7** |
| AK | 335 | 9.9 | 103 | 6.9 | 230 | 10.8 | - | - | 2 | - |
| AZ | 2,005 | 11.6 | 763 | 8.7 | 1,131 | 11.9 | 55 | 21.0 | 56 | 31.5 |
| CA,N | 4,826 | 6.1 | 2,126 | 5.0 | 1,446 | 6.8 | 1,201 | 12.4 | 53 | 27.0 |
| CA,E | 2,279 | 9.5 | 923 | 7.7 | 1,303 | 10.8 | 23 | 22.7 | 30 | 34.0 |
| CA,C | 8,636 | 7.8 | 3,033 | 6.8 | 5,365 | 8.1 | 81 | 19.5 | 157 | 18.9 |
| CA,S | 1,983 | 6.2 | 267 | 4.3 | 1,650 | 6.0 | 40 | 6.8 | 26 | 25.5 |
| HI | 607 | 9.8 | 362 | 7.1 | 193 | 10.8 | 39 | 19.7 | 13 | 16.0 |
| ID | 444 | 12.4 | 30 | 4.3 | 363 | 11.7 | 36 | 20.0 | 15 | 31.0 |
| MT | 522 | 11.0 | 220 | 9.8 | 224 | 10.3 | 62 | 15.9 | 16 | 20.0 |
| NV | 1,531 | 10.0 | 791 | 10.4 | 682 | 9.5 | 43 | 9.5 | 15 | 36.0 |
| OR | 1,874 | 10.5 | 658 | 9.7 | 1,160 | 11.9 | 8 | - | 48 | 23.9 |
| WA,E | 530 | 8.3 | 168 | 5.6 | 321 | 8.5 | 29 | 13.0 | 12 | 23.5 |
| WA,W | 2,746 | 9.4 | 787 | 6.1 | 1,902 | 10.0 | 21 | 16.0 | 36 | 19.0 |
| GUAM | 31 | 7.0 | 11 | 6.0 | 16 | 5.0 | 4 | - | - | - |
| NMI | 27 | 9.0 | 8 | - | 14 | 8.5 | 1 | - | 4 | - |
| **10TH** | **8,072** | **9.1** | **1,394** | **5.4** | **5,161** | **8.5** | **1,337** | **12.1** | **180** | **21.5** |
| CO | 2,034 | 8.6 | 58 | 2.1 | 1,777 | 7.9 | 151 | 18.0 | 48 | 30.5 |
| KS | 1,162 | 9.0 | 357 | 7.7 | 644 | 8.0 | 130 | 18.0 | 31 | 23.0 |
| NM | 1,073 | 9.6 | 135 | 4.2 | 465 | 8.1 | 452 | 11.6 | 21 | 20.4 |
| OK,N | 674 | 10.0 | 70 | 3.8 | 573 | 11.9 | 16 | 19.5 | 15 | 19.0 |
| OK,E | 454 | 8.2 | 319 | 9.0 | 110 | 7.8 | 16 | 11.0 | 9 | - |
| OK,W | 1,237 | 8.0 | 320 | 3.9 | 492 | 7.0 | 403 | 11.0 | 22 | 15.5 |
| UT | 1,137 | 10.2 | 86 | 4.2 | 994 | 10.3 | 36 | 19.7 | 21 | 35.0 |
| WY | 301 | 11.3 | 49 | 5.0 | 106 | 83.4 | 133 | 10.0 | 13 | 15.0 |
| **11TH** | **19,608** | **7.4** | **2,881** | **4.2** | **15,090** | **7.7** | **1,307** | **13.4** | **330** | **20.1** |
| AL,N | 2,956 | 5.2 | 579 | 6.8 | 2,313 | 4.8 | 29 | 21.7 | 35 | 26.0 |
| AL,M | 817 | 10.5 | 227 | 7.2 | 493 | 10.4 | 74 | 17.0 | 23 | 17.4 |
| AL,S | 613 | 8.6 | 120 | 5.4 | 452 | 8.4 | 29 | 15.5 | 12 | 14.0 |
| FL,N | 877 | 7.9 | 236 | 5.2 | 606 | 7.4 | 19 | 14.0 | 16 | 21.0 |
| FL,M | 4,545 | 8.6 | 397 | 4.1 | 3,955 | 8.1 | 114 | 17.5 | 79 | 21.4 |
| FL,S | 5,676 | 5.9 | 563 | 2.7 | 4,727 | 5.1 | 298 | 10.3 | 88 | 17.2 |
| GA,N | 2,943 | 8.6 | 523 | 4.8 | 1,642 | 7.0 | 724 | 12.3 | 54 | 25.5 |
| GA,M | 659 | 11.1 | 136 | 7.9 | 509 | 12.6 | 2 | - | 12 | 22.0 |
| GA,S | 522 | 9.0 | 100 | 5.0 | 393 | 9.5 | 18 | 17.0 | 11 | 23.5 |

NOTE: MEDIAN TIME INTERVALS NOT COMPUTED WHEN FEWER THAN 10 CASES REPORTED. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.