IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KELLY BIRES, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) **CASE NO.** |
| WALTOM, LLC D/B/A WALTOM RACING, LLC, | ) **1:07-CV-959-JAB-WWD** ) ) |
| *Defendant.* | ) ) |

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

Defendant, WalTom, LLC d/b/a WalTom Racing, LLC ("WalTom"), hereby submits this Memorandum of Law in Support of its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (the "Motion").

### PRELIMINARY STATEMENT

On December 20, 2007, WalTom timely removed this case from the General Court of Justice, Superior Court Division, Rowan County, North Carolina. Plaintiff seeks a declaratory judgment that a Professional Driving and Sponsorship Agreement, dated February 9, 2006, by and between WalTom and Plaintiff (the "Agreement") is unconscionable and therefore void and unenforceable. The Agreement contains a forum selection clause that mandates that any action regarding the enforcement or interpretation of the Agreement be brought in Cook County, Illinois. WalTom therefore respectfully moves the Court for an order transferring the case to the Northern District of Illinois.

## **FACTUAL BACKGROUND**

WalTom is an Illinois limited liability company with its principal place of business in Riverside, Illinois. Riverside, Illinois is in Cook County and Cook County is in the Northern District of Illinois. Declaration of John Mulvenna ("Mulvenna Decl.") at ¶ 3.[1] Walter and Tom Gleitsman formed WalTom in 2000 to field an auto racing team in the ASA Series.[2] WalTom opened its first race shop in Burr Ridge, Illinois in 2000, and opened a second race shop in Pewaukee, Wisconsin in December 2003. *Id.* at ¶ 5. WalTom is managed in Illinois, and both of its Managing Members, Walter Gleitsman and Tom Gleitsman, reside in Cook County, Illinois. *Id.* at ¶ 4.

In 2004, WalTom began a Driver Development Program to educate and train young drivers who demonstrated a superior ability and talent in motorsports. *Id.* at ¶ 6. WalTom's first Development Driver, who raced in the re-named ASA Late Model Series, was Stephen Leicht. Leicht raced for WalTom during the 2004 and 2005 seasons and won the 2005 ASA Late Model Series National Championship. *Id.* at ¶ 7. After Leicht signed a contract with Robert Yates Racing, WalTom began searching for its next Development Driver and hosted a driving test in Hudson, North Carolina for several driver candidates. *Id.* at ¶ 8. The driver testing held in Hudson, North Carolina in October 2005 was the only interaction between WalTom and Plaintiff related to the Agreement involving North Carolina prior to this lawsuit. *Id*. at ¶ 28. The driver test sessions took place before Plaintiff was selected to drive for WalTom and before any contractual negotiations had commenced. *Id.*

---

[1] The Mulvenna Decl. is attached to Defendant's Motion as <u>Exhibit A</u>.
[2] The American Speed Association ("ASA") sanctioned a national touring series for stock car racing. ASA later sanctioned a Late Model series as well as several regional touring series. The original ASA ceased operating by the end of 2004, but the Late Model Series survived. Rob Fisher, *ASA – Savior of the Short Track*, http://www.circletrack.com/thehistoryof/ctrp_0701_asa_racing/index.html (last visited Jan. 15, 2008).

Following this testing in late 2005, WalTom selected Plaintiff, Kelly Bires, to be its driver for the 2006 season and Plaintiff accepted WalTom's offer to be its driver. *Id.* at ¶ 9. WalTom then began contract negotiations with Plaintiff and Plaintiff, a Wisconsin native, leased an apartment in Hartland, Wisconsin close to WalTom's race shop. *Id.* at ¶ 10.

WalTom's counsel, Faustin Pipal, Esq., an Illinois lawyer, prepared the initial draft of the Agreement in conjunction with John Mulvenna, WalTom's General Manager. *Id.* at ¶ 11. Upon information and belief, Plaintiff's attorney, who reviewed and advised Plaintiff about the Agreement, resides in Wisconsin. *Id.* at ¶ 12. In addition to Plaintiff and his attorney, Tom Gleitsman and John Mulvenna are the only other persons involved in discussions and negotiations relating to the Agreement. *Id.* at ¶ 13. WalTom first presented the Agreement to Plaintiff in Indiana at the ASA Late Model Series Awards Banquet and all other discussions and negotiations related to the Agreement took place in Illinois or Wisconsin. *Id.* at ¶ 14.

Plaintiff executed the Agreement in Wisconsin on February 7, 2006, and sent the signed Agreement to WalTom in Illinois. WalTom executed the Agreement in Illinois on February 9, 2006.[3]  *Id.* at ¶ 15. The Agreement was not negotiated, drafted, executed, or amended in North Carolina. *Id.* at ¶ 16.

Pursuant to the Agreement, WalTom paid Plaintiff a monthly salary plus a percentage of race winnings and monetary bonuses for race victories. WalTom also paid all of the expenses associated with running a competitive racing team including, but not limited to, pit equipment, race haulers, tools, cars, travel expenses, professional fees, personnel expenses, uniforms, rent, utilities, and other associated costs and expenses. *Id.* at ¶ 17. Plaintiff was paid during the term

---

[3] A copy of the executed Agreement is attached to the Mulvenna Decl. as Exhibit 1 and is referred to as "Agreement at ¶ ___."

3

of the Agreement with checks drawn from WalTom's bank in Illinois that were either delivered to the Pewaukee race shop or mailed to Plaintiff at his address in Wisconsin. *Id.*

All of WalTom's corporate records are in Illinois, *id.* at ¶ 18, and all of the documents in possession of WalTom relevant to the negotiations and execution of the Agreement are in Illinois. *Id.* at ¶ 19. Potential witnesses in this matter may include other WalTom employees, all of whom reside in Illinois or Wisconsin. *Id.* at ¶ 20.

Before he began driving for WalTom and for the entire time that he drove for WalTom, Plaintiff resided in Wisconsin. *Id.* at ¶ 21. Plaintiff competed for WalTom during the 2006 race season and competed in races in Wisconsin, Illinois, Michigan, New York, Pennsylvania, Minnesota, Iowa, Tennessee, Texas, Missouri, and Indiana. Plaintiff did not race for WalTom in North Carolina during the 2006 racing season. Plaintiff did not take part in promotional activities of WalTom in North Carolina during the 2006 racing season. *Id.* at ¶ 22. Only after Plaintiff stopped driving for WalTom, did he move to North Carolina. *Id.* at ¶ 21.

The Agreement contains a choice of law and forum selection provision that states as follows:

> <u>Illinois Law Applies</u>: This Agreement shall be deemed to be executed in the State of Illinois and shall be construed in accordance with the laws of said State, and ***any action to enforce or interpret the terms hereof shall be brought exclusively in the courts of Cook County, IL***. In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and provisions hereof.

Agreement at ¶ 10 (emphasis added). During the contract negotiations, Plaintiff requested and received changes to the Agreement, and never made any objection to the forum selection clause (or choice of law provision). Mulvenna Decl. at ¶ 24.

The Agreement requires Plaintiff to pay certain royalties to WalTom. Agreement at ¶ 5. Because Plaintiff has so far refused to comply, not even this part of the Agreement has been performed in North Carolina. Mulvenna Decl. at ¶ 26. The only connection between the Agreement and North Carolina is Plaintiff's current residence. *Id.* at ¶ 27. Upon information and belief, Plaintiff suffers from no infirmities or financial hardships that would impede his ability to travel to Illinois. *Id.* at ¶ 29.

## ARGUMENT

A.  **THIS COURT SHOULD TRANSFER THE ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1404(A).**

A district court may transfer a civil action to another district where it could have been brought originally "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). The court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citations omitted). The purpose of § 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Accordingly, litigation should proceed "where the case finds its 'center of gravity'." *Hoefer v. United States DOC*, No. 00-0918 (VRW), 2000 U.S. Dist. LEXIS 9299, *8 (N.D. Cal. June 28, 2000).

1. <u>This Action Could Have Been Brought in the Northern District of Illinois</u>.

Venue is governed by 28 U.S.C. § 1391(a) when subject matter jurisdiction is based on diversity. Section 1391(a) provides that venue is proper only in:

5

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no other district in which the action may otherwise be brought.

Pursuant to 28 U.S.C. § 1391(c), "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

Venue is proper in the Northern District of Illinois pursuant to § 1391(a)(1) because WalTom resides in the Northern District of Illinois. Mulvenna Decl. at ¶ 4. Venue is also proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the alleged events or omissions giving rise to the claims occurred there. *See* 28 U.S.C. § 1391(a)(2).

    2.    <u>Transfer of Venue to the Northern District of Illinois Will Serve the Convenience of the Parties and Witnesses and the Interests of Justice.</u>

    (a)    *The Agreement Contains a Valid Forum Selection Clause.*

This Court should grant WalTom's motion to transfer because the parties agreed that any dispute concerning the Agreement be litigated in the Northern District of Illinois. While the party seeking transfer ordinarily has "the burden to show that a transfer of venue would be in the interest of justice," "a valid forum selection clause shifts the burden from the party seeking transfer to the party opposing enforcement of the clause." *Price v. Leasecomm Corp.*, 2004 U.S. Dist. LEXIS 5467, *9 (M.D.N.C. March 31, 2004) (internal citations and quotations omitted). "The party opposing enforcement of the clause must then provide 'exceptional facts' which demonstrate that enforcing the clause would be unjust or unreasonable." *Id*. Plaintiff cannot satisfy this burden, and the forum selection clause should therefore be enforced.

4826-4853-3762.06

Federal law governs the validity of forum selection clauses, *Stewart*, 487 U.S. at 32, and in the Fourth Circuit, forum selection clauses are presumed valid. *Price*, 2004 U.S. Dist. LEXIS 5467, at *10. This presumption of validity can be overcome only by a clear showing that the clause is unreasonable. *Id*. Forum selection clauses may be unreasonable if: (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state. *Id*. (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996)).

None of these exceptions applies. The forum selection clause is binding and this case should be transferred to the Northern District of Illinois.

    (b) *No fraud or overreaching exists.*

No fraud or overreaching exists. "The party seeking to avoid enforcement of the clause may not succeed by alleging fraud in the inducement to sign the contract itself." *Price*, 2004 U.S. Dist. LEXIS 5467, at *10-11. Instead, Plaintiff must show that the inclusion of the forum selection clause was the product of fraud or coercion. *Id*. at *11. As detailed below, the forum selection clause was not induced by fraud or coercion.

The forum selection clause is clearly printed in the Agreement in the paragraph directly above where Plaintiff initialed to signify he had read the page. Agreement at ¶ 10. This paragraph is also in close proximity to where Plaintiff filled in his address, thereby drawing further attention to the provision. *See id*. The forum selection clause is in the same size lettering as the rest of the Agreement, and was included in a provision with the underlined heading "<u>Illinois Law Applies</u>." *Id*. Further, the Agreement resulted from negotiations between the

7

parties during which Plaintiff was represented by counsel. *See* Agreement at ¶ 17; *see also* Mulvenna Decl. at ¶ 12. Indeed, Plaintiff requested and received several changes to the Agreement and never raised any objection to the forum selection clause. *Id.* at ¶ 24. *Cf. Price*, 2004 U.S. Dist. LEXIS 5467, at *11-12 (holding no fraud or overreaching existed where plaintiff signed a non-negotiable form contract in two places near the forum selection language that was in small print, but underlined and in bold). "All that is required for a freely negotiated forum selection clause to be reasonable is that *one* of the parties to the agreement have a connection to their contractual choice of forum." *Republic Mortgage Ins. Co. v. Brightware, Inc.*, 35 F.Supp.2d 482, 484 (M.D.N.C. 1999) (citation omitted). WalTom is clearly connected to Illinois, and after it has freely negotiated for the right to demand suit in Illinois, "it would not be appropriate for this Court to upset the balance of its bargain." *See id.* at 485.

The forum selection clause was not a product of fraud or coercion, but rather a conspicuous provision of a freely negotiated Agreement.

        (c)    *The Northern District of Illinois is not gravely inconvenient or unfair.*

Plaintiff will not be deprived of his day in court due to a transfer of venue. "A party seeking to avoid a forum selection clause must prove more than the inconvenience of litigating in a distant forum. Instead, [he] must prove that a transfer would be so inconvenient that it would effectively deny [his] day in court." *Price,* 2004 U.S. Dist. LEXIS 5467, at *12. In *Price*, the plaintiff would have had to travel from North Carolina to Massachusetts if the action were transferred. Despite the fact the plaintiff was unemployed with financial limitations and suffered from health problems that would make it difficult to travel, this Court held that she failed to show the "extraordinary circumstances" required to avoid enforcement of the forum selection

clause. *See id.* at *13. To the best of WalTom's knowledge, Plaintiff suffers from no infirmities or financial hardships which would impede his ability to travel to Illinois as Plaintiff recently signed a multi-year lucrative contract with JTG/Wood Brothers. Mulvenna Decl. at ¶ 29. Plaintiff therefore cannot make the required showing to avoid enforcement of the forum selection clause.

> (d) *Applying Illinois law would not be unfair, nor deprive Plaintiff of a remedy.*

Unfairness of the chosen law is not an issue in this analysis because Illinois law will govern the dispute regardless of venue. First, the parties have agreed to a choice of law provision declaring that Illinois law will apply. Agreement at ¶ 10. "If this Court retained the case, sitting in diversity, it would apply the laws of North Carolina, including its choice of law rules. North Carolina courts determine the applicable state law by looking to the state in which the contract was made. Under North Carolina law, a contract is formed where the final act of acceptance takes place." *Price*, 2004 U.S. Dist. LEXIS 5467 at *13-14 (internal citations omitted); *see also Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 606 S.E.2d 728 (N.C. App. 2005); *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 515, 157 S.E. 860, 862 (1931) (contract was formed where the last act of signing took place). The Agreement was made in Illinois as Plaintiff signed the Agreement February 7, 2006, in Wisconsin and WalTom then signed the Agreement in Illinois on February 9, 2006. Mulvenna Decl. at ¶ 15. This counter-signing was the final act of acceptance. Thus, in addition to the choice of law provision, because the contract was made in Illinois, Illinois law governs.

    (e)  *The forum selection clause does not offend a strong North Carolina public policy.*

Finally, the forum selection clause does not offend a strong North Carolina public policy. A forum selection clause *per se* contravenes North Carolina public policy if it was *entered into in North Carolina* and requires the prosecution of the action to be instituted or heard in another state. *See* N.C.G.S. § 22B-3. Forum selection clauses entered into in other states are given effect. *See Price*, 2004 U.S. Dist. LEXIS 5467, at *15 (citing *Key Motorsports, Inc. v. Speedvision Network, L.L.C.*, 40 F. Supp. 2d 344, 349 (M.D.N.C. 1999) as "finding N.C.G.S. § 22B-3 inapplicable where contract negotiated in North Carolina was counter-signed in another state); *Szymczyk*, 168 N.C. App. at 187, 606 S.E.2d at 733. As discussed above, the Agreement was entered into in Illinois, thus N.C.G.S. § 22B-3 does not apply. Likewise, the forum selection clause is valid and enforceable regardless of whether the royalty provision challenged by Plaintiff is unconscionable.[4]

    3.  <u>Factors Weigh Heavily in Favor of Transfer.</u>

While "the presence of a forum selection clause will be a significant factor that figures centrally in the district court's calculus," a district court will weigh the forum selection clause along with other factors in deciding whether to transfer a case pursuant to § 1404(a). *Stewart*, 487 U.S. at 29. This Court has articulated those factors as: "(1) the plaintiff's choice of forum;

---

[4] Any argument by Plaintiff that the forum selection clause is void and unenforceable because the entire Agreement is void and unenforceable is unavailing because the forum selection clause is severable. *See Wolf v. Grass*, 2005 U.S. Dist. LEXIS 36552, *4-7 (S.D. Il. July 29, 2005) (holding that a forum selection clause is severable: "It is well-settled that if a contract contains both valid and invalid provisions, the valid provisions of the contract may be enforced separately, even in the absence of a severability clause"). The paragraph encompassing the forum selection clause and choice of law provision expressly states: "In the event any provision hereof shall for any reason be found invalid, illegal or unenforceable, then, and in any such event, the same shall not affect the validity of the remaining portion and provisions hereof." Agreement at ¶ 10; *see Singer Asset Fin. Co. v. Duboff Family Inv. (In re Duboff)*, 290 B.R. 652, 657 (Bankr. C.D. Il. 2003) (enforcing a severability clause).

(2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is the home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws." *St. Andrews Presbyterian Coll. v. The S. Ass'n of Colleges and Sch., Inc.*, 2007 U.S. Dist. LEXIS 87953, *24 (M.D.N.C. November 29, 2007). Aside from three factors which are neutral in this analysis, the factors clearly favor a transfer of venue.

    (a)    *Plaintiff's choice of forum*

Here, this factor weighs in favor of transfer because Plaintiff's initial forum choice was actually that in the forum selection clause – the Northern District of Illinois (which encompasses Cook County, Illinois) – not the forum in which Plaintiff filed suit. *Republic Mortgage Ins. Co. v. Brightware, Inc.*, 35 F.Supp.2d 482, 486 (M.D.N.C. 1999). "[I]t is more logical to consider the plaintiff's initial choice of forum to be the forum that is contractually agreed upon." *Id.*; *see also Morehead Assocs. v. Intuitive Mfg. Sys.,* 2006 U.S. Dist. LEXIS 47591 (W.D.N.C. July 11, 2006); *St. Andrews*, 2007 U.S. Dist. LEXIS 87953, at *26. Although Plaintiff chose to file his Complaint in Rowan County, North Carolina in November 2007, he originally "chose" Cook County, Illinois via the forum selection clause in February 2006.

Even if the Court were to consider Plaintiff's second choice of North Carolina, this choice receives no deference when there is a forum selection clause:

11

> In attempting to enforce the contractual venue, the movant is no longer attempting to limit the plaintiff's right to choose its forum; rather, the movant is trying to enforce the forum that the plaintiff had already chosen: the contractual venue. In such cases, we see no reason why a court should accord deference to the forum in which the plaintiff filed its action. Such deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system.

*Republic Mortgage*, 35 F. Supp. 2d at 486 (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).[5]  The Agreement contains a valid forum selection clause in which the Plaintiff chose Illinois, making the first factor strongly favor transfer.

(b)     *The residence of the parties*

WalTom is an Illinois limited liability company with a principal place of business in the Northern District of Illinois. Mulvenna Decl. at ¶ 3. Although he presently resides in North Carolina, Plaintiff was a Wisconsin citizen and resident at the time he executed the Agreement and during the entire time he drove for WalTom. *Id*. at ¶ 21. This factor therefore also weighs against retaining the action in North Carolina.

(c)     *The relative ease of access of proof*

All of WalTom's corporate records are in Illinois, *id*. at ¶ 18, and all of the documents in WalTom's possession relevant to the negotiations and execution of the Agreement are in Illinois. *Id*. at ¶ 19. WalTom is managed in Illinois, *id*. at ¶ 4, and the Managing Members, Walter and Tom Gleitsman, reside in Illinois. *Id*. John Mulvenna, the general manager of WalTom, likewise resides in Illinois. *Id*. at ¶ 3. WalTom employees live in Illinois and Wisconsin. *Id*. at

---

[5]  Even absent an enforceable forum selection clause, "courts afford less weight to a plaintiff's choice if none of the conduct creating the cause of action occurred in the forum, and the forum has no connection with the cause of action." *Sweeney v. Pa. Nat'l Mut. Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 14189 (M.D.N.C. February 27, 2007) (internal citations omitted); *see also Parham v. Weave Corp.*, 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004). Here, North Carolina bears no relation to the parties' dispute as no part of the Agreement was negotiated, executed, or performed in North Carolina, Mulvenna Decl. at ¶ 16, and WalTom does not reside in this district, nor did Plaintiff work for WalTom in this district. *Id*. at ¶¶ 3, 22. Indeed, the only connection to North Carolina is Plaintiff's current residence. *Id*. at ¶ 27.

¶ 20. An Illinois lawyer drafted the Agreement. *Id.* at ¶ 11. Finally, the persons who negotiated the Agreement, including Plaintiff's lawyer, are in Illinois and Wisconsin, as are the documents in their possession relevant to the drafting and negotiation of the Agreement. *See id.* at ¶¶ 12, 13, and 19. This factor therefore overwhelmingly favors transfer.

> (d) *The availability of compulsory process for attendance of witnesses and costs of obtaining attendance of willing witnesses*

All persons other than Plaintiff with knowledge of the dispute are located in Illinois and Wisconsin. If this proceeding were allowed to continue in the Middle District of North Carolina, many key witnesses would be outside the subpoena power of this Court. The Complaint fails to identify any relevant witnesses located in the Middle District of North Carolina. Although it is doubtful any of Plaintiff's witnesses would be in North Carolina, Plaintiff can bring them to Illinois without compulsory process.

While WalTom employees would not need to be subpoenaed to testify, the costs of traveling from Pewaukee, Wisconsin and Riverside, Illinois would be far greater if the action were not transferred. Pewaukee is just 109 miles from the Chicago courthouse in the Northern District of Illinois while Riverside is a mere 14 miles away. Driving Directions, www.mapquest.com (last visited Jan. 8, 2008). Durham, North Carolina (the division of the Middle District to which this case has been assigned), however, is 910 miles away from Pewaukee, and 811 from Riverside. *Id.* Retaining this action in North Carolina would mean the expense and inconvenience of air travel for several people, whereas Plaintiff is the only individual who necessarily would have to fly to a court proceeding in Chicago.

(e) *Possibility of a view*

This factor is neutral as there is nothing tangible to view. *See Abbot Group, LLC v. Hobie Cat Co.*, 2007 U.S. Dist. LEXIS 46829, *9 (W.D.N.C. June 26, 2007).

(f) *Enforceability of judgment, if obtained*

Since a judgment obtained in any federal district is easily transferred to any other federal district, this factor is neutral. *See Century Furniture, LLC v. C & C Imps., Inc.*, 2007 U.S. Dist. LEXIS 68343, *14 (W.D.N.C. September 14, 2007).

(g) *The relative advantages and obstacles to a fair trial*

It is possible that a North Carolina jury could be biased in favor of an up and coming NASCAR driver. NASCAR is hugely popular in North Carolina, to the point of being considered a statewide pastime:

> After World War II, stock car racing evolved as a sport in the foothills and Piedmont of North Carolina. It quickly became one of the deepest traditions in North Carolina popular culture. Several world-class tracks stretch across the state and provide fans a chance to watch the legends of the sport every year. North Carolina is the birthplace and home of many NASCAR legends, including Dale Jarrett, Dale Earnhardt, and Richard Petty.

*NASCAR in North Carolina*, http://www.welcometonc.com/category/NASCAR/ (last visited January 3, 2008). "Studies show NASCAR generates about $5 billion a year in North Carolina. About 90 percent of race teams are based in the state, and the NASCAR Hall of Fame is being built in Charlotte." Cullen Browder, *Officials Scramble to Keep N.C.'s NASCAR Races*, WRAL, Nov. 15, 2007, http://www.localtechwire.com/business/story/2047886/. NASCAR has seven offices in the United States, three of which are in North Carolina. *About NASCAR*, http://www.nascar.com/guides/about/nascar/ (last visited January 4, 2008). While there is no doubt the Northern District of Illinois has NASCAR fans, the presence of NASCAR is nowhere

near as pervasive in the Chicago area as it is throughout the state of North Carolina. WalTom has no doubt that it would receive a fair trial in this Court. Given the difficulty of predicting jurors' affinity for a successful young driver, however, fairness considerations favor a transfer of venue.

      (h)    *Other practical problems that make a trial easy, expeditious and inexpensive*

This action will likely proceed more expeditiously and inexpensively in the Northern District of Illinois because of the presence in that district of WalTom, the relevant witnesses, the vast majority of documents, and legal counsel involved in the drafting and negotiation of the Agreement. A transfer to that district will eliminate the need for WalTom and witnesses to travel back and forth to North Carolina to attend hearings and trial. In addition, a transfer of this action will not cause a significant delay or prejudice to the parties. This action was filed approximately two months ago (November 27, 2007), and no substantial steps (besides removal and an extension of time) have been taken by either party in the interim. Thus, a transfer at this early stage in the lawsuit will not unduly delay the proceedings or cause undue prejudice. As discussed below, comparative statistics show that there will be no delay due to court congestion as the median time to disposition is significantly shorter in the Northern District of Illinois than in the Middle District of North Carolina.

      (i)    *The administrative difficulties of court congestion*

The Northern District of Illinois has a median time interval from filing to disposition of civil cases of 6.3 months. The Middle District of North Carolina has a median time interval from filing to disposition of 10.7 months. Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition,

15

http://www.uscourts.gov/caseload2007/tables/C05Mar07.pdf (last viewed January 4, 2008), attached to Defendant's Motion as <u>Exhibit B</u>. This factor favors transfer.

   (j) *The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is the home with the state law that must govern the action*

The controversy raised in Plaintiff's lawsuit is whether a contract written and executed in Illinois is unconscionable. The unconscionability inquiry involves delving into the procedural aspects of contract formation as well as the substantive terms of the contract itself. None of the contract formation – negotiations, drafting, or amendments – took place in North Carolina. Mulvenna Decl. at ¶ 16. The substantive terms of the contract have nothing to do with North Carolina and apart from the royalty payments due WalTom, the contract has been fully performed on both sides. *See id*. at ¶¶ 25-26. Importantly, none of the performance took place in North Carolina. *Id*. at ¶¶ 22, 26. In fact, the only interaction between the parties related to the Agreement involving North Carolina was the driver test sessions which happened before Plaintiff was even selected to drive for WalTom, well before any contract negotiations took place. *Id*. at ¶ 28.

Like the defendant in *Republic Mortgage*, WalTom is a corporate resident of Illinois that has not been paid for its services. 35 F. Supp. 2d at 486. Illinois has an interest in its corporations receiving what they are due under their contracts. The Agreement calls for Illinois law to govern. In North Carolina, such choice of law provisions are enforced. *See id*. (citing *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). An Illinois court will be more familiar with Illinois law. The contract was drafted, negotiated, and executed in the Midwest and has the greatest impact on citizens of Illinois. Unlike *Republic Mortgage*, all of the

performance under the Agreement took place *outside* North Carolina and this factor therefore strongly favors transfer given the interest in having this case resolved in Illinois.

      (k)    *The avoidance of unnecessary problems with conflict of laws*

This action will be governed by Illinois law regardless of venue, so this factor is neutral. *See e.g. Morehead Assoc.*, 2006 U.S. Dist. 47591, at *14.

## CONCLUSION

This case should be transferred to Illinois. The Agreement contains a valid forum selection clause which requires lawsuits such as this to be brought in Illinois. Five of the eleven relevant factors overwhelmingly favor transfer, three factors favor transfer, and three factors are neutral. Therefore, the Court should grant WalTom's motion in its entirety.

This 25th day of January, 2008.

                                      /s/ Christopher C. Lam
                                      John H. Culver III
                                      N.C. State Bar No. 17849
                                      Christopher C. Lam
                                      N.C. State Bar No. 28627
                                      Kennedy Covington Lobdell & Hickman, L.L.P.
                                      214 North Tryon Street, 47th Floor
                                      Charlotte, NC  28202
                                      Telephone:  704-331-7449
                                      Facsimile:  704-353-3149
                                      clam@kennedycovington.com
                                      ATTORNEYS FOR DEFENDANT

4826-4853-3762.06

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2008, I electronically filed the foregoing *MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> William Bray
> The Bray Law Firm, PLLC
> 4701 Hedgemore Drive, Suite 816
> Charlotte, North Carolina 28209
> wbray@braylaw.com
> *Attorneys for Plaintiff*

I have also caused to be deposited a copy of the same in an official depository of the United States Postal Service in a postage-paid envelope addressed to Plaintiff's counsel at the above address.

This 25th day of January, 2008.

/s/ Christopher C. Lam
Christopher C. Lam